[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 258.]

THE STATE EX REL. KINNEAR DIVISION, HARSCO CORPORATION, APPELLEE
AND CROSS-APPELLANT, V. INDUSTRIAL COMMISSION OF OHIO; DRUGGAN,
APPELLANT AND CROSS-APPELLEE.

[Cite as *State ex rel. Kinnear Div., Harsco Corp. v. Indus. Comm.*,
1997-Ohio-40.]

*Workers' compensation—Application for permanent total disability
compensation—Industrial Commission's order granting compensation
remanded when order does not disclose reasoning for finding that
claimant's retirement was involuntary.*

(No. 94-2390—Submitted October 8, 1996—Decided January 15, 1997.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No.
93APD08-1068.

_____

{¶ 1} On February 26, 1986, claimant-appellant and cross-appellee, Harold
W. Druggan, received an injury in the course of and arising out of his employment
with appellee and cross-appellant, Kinnear Division of Harsco Corporation
("Harsco").  Harsco, a self-insured employer, initially certified Druggan's workers'
compensation claim for "[m]id and low back sprain."  Thereafter, Druggan's
attending physician, John H. Guluzian, D.O., periodically submitted

{¶ 2} C-84 forms, entitled "Physician's Report Supplemental," to Harsco
certifying that Druggan was temporarily and totally disabled.  Based on Dr.
Guluzian's C-84s, Harsco made temporary total disability ("TTD") compensation
payments to Druggan.[1]

_____

1.  It appears from the record that Druggan's attending physician from the date of his injury until
May 21, 1987, was a Dr. Loux.  Dr. Loux, however, apparently left Ohio and on May 21, 1987,
Druggan began treatment with Dr. Guluzian, who thereafter remained Druggan's attending

**{¶ 3}** On March 22, 1990, Druggan, at age sixty-eight, applied for "Normal Retirement Pension" benefits under his employee pension plan, which Harsco granted. The plan also offered a "Permanent Disability Retirement Pension" for those who qualified. Druggan explained on his pension application that he had not worked since February 25, 1986 because of "Workers [*sic*] Comp Disability."

**{¶ 4}** On October 7, 1991, Druggan applied for permanent total disability ("PTD") compensation with the Industrial Commission of Ohio ("commission"). In support of his PTD application, Druggan attached a report from Dr. Gerard M. Papp, dated January 3, 1990, opining that Druggan was not "capable of sustained gainful employment as a tool and dye [*sic*] maker," and a report from Dr. Guluzian, dated October 2, 1991, in which Dr. Guluzian certified that Druggan "is now permanently and totally disabled from all gainful employment." Druggan's application was placed on the "*Eaton* docket," and Dr. Guluzian continued to submit C-84s certifying Druggan as temporarily and totally disabled (and Harsco continued to pay TTD compensation based thereon), pending a hearing on Druggan's PTD application scheduled for August 25, 1992.

**{¶ 5}** The matter was heard on that date by a staff hearing officer ("SHO"), who issued an "interlocutory order" finding that Druggan is permanently and totally disabled and awarding PTD compensation from August 26, 1992 to December 6, 1992. Also on August 25, 1992, Druggan's claim was amended to include "[a]ggravation of pre-existing degenerative disc disease at L3-4, L4-5, L5-S1."

**{¶ 6}** In January 1993, Harsco filed a vocational report dated December 30, 1992 from Parman & Associates, Inc., a rehabilitation consulting firm, which opined that Druggan had the ability to perform sustained remunerative

---

physician throughout his claim. Since the issues raised herein are based on events subsequent to May 21, 1987, no further reference will be made to Dr. Loux as Druggan's attending or treating physician.

employment.[2] On March 12, 1993, an attorney in the commission's legal section prepared a statement of facts, but omitted mention of the vocational report from Parman & Associates, Inc.

**{¶ 7}** On April 7, 1993, the commission heard Druggan's application for PTD compensation. A court reporter was present and a transcript of the proceedings was prepared and made part of the record. At the hearing, Harsco's counsel alerted the commission to the fact that the vocational report filed in January had not been addressed in the statement of facts, resubmitted it for review, and outlined the critical portions of the report. Also, Harsco's counsel argued that PTD benefits should be denied because Druggan retired in the spring of 1990. The following colloquy then took place between Stewart R. Jaffy, Druggan's counsel, and Commissioners Donald M. Colasurd, James L. Mayfield and Richard Geltzer:

"MR. COLASURD: The decision finds the claimant permanently and totally disabled. Mr. McAllister and Mr. Levitt voted no.

"MR. JAFFY: I think because of that recent Supreme Court ruling that Mr. Sutter referred to it's necessary to have a finding that the retirement was not a voluntary retirement.

"MR. COLASURD: I agree with you. I personally do not believe that this man's retirement was voluntary. I believe that he was removed from the work force based on his industrial injury of February 26, 1986.

"MR. MAYFIELD: I concur with that.

"MR. GETZLER [*sic*]: I agree."

---

2. In response, Druggan's vocational expert, Anthony C. Riccio, Ph.D., stated in a report dated February 8, 1993, that:

"The [Parman] report lists six jobs that Mr. Druggan can immediately or without training transfer his skills to. But all of these jobs require twisting, bending, exerting force on tools, and occasionally assuming contorted positions. It is folly to suggest that a fat old man can perform these functions on a competitive basis, when he has been allowed close to a maximal allowance for his back condition."

**{¶ 8}** On April 7, 1993, the commission issued its findings of fact and order which explained, in relevant part, that:

"The reports of Doctor(s) Guluzian, Seeder, Gatens and Riccio were reviewed and evaluated. This order is based particularly upon the reports of Doctor(s) Guluzian, Seeder, Gatens and Riccio, evidence in the file and/or evidence adduced at the hearing.

"Claimant is a 71 year old male, who was 64 at the time of the injury. Claimant has an 11th grade education. Claimant worked as a tool and dye [*sic*] maker for 41 years for the employer of record before the injury. Claimant's only other job was in the Army from 1943-45. Dr. Gatens found a 40% permanent partial impairment of the body as a whole and opines that the industrial injury permanently prevents claimant from returning to his former position of employment. Dr. Guluzian found claimant to be permanently and totally disabled from all gainful employment. Dr. Seeder found claimant to have reached maximum medical improvement and that claimant is not capable of unrestricted work activities. Dr. Riccio found claimant to be permanently and totally disabled. Thus the medical evidence indicates the claimant's allowed conditions significantly limits [*sic*] his ability to engage in gainful work activity. The Commission determines that, at best, the claimant can only engage in sedentary work. However, considering the claimant's advanced age, education, lack of transferrable [*sic*] job skills and 41 year work history with the employer of record, claimant is found to be permanently and totally disabled and his IC-2 Application is granted."

**{¶ 9}** Harsco filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion by granting Druggan's application for PTD compensation. Harsco sought a writ of mandamus "compelling the Industrial Commission to vacate its previous order and issue an order denying Respondent Druggan's application for permanent total disability benefits." The appellate court, however, issued a limited writ ordering

the commission "to vacate its April 7, 1993 order, and to enter a new order on permanent total disability that addresses the retirement issue and indicates commission consideration of all the relevant vocational evidence of record, including the reports [*sic*] [of] Parman and Associates, Inc."

{¶ 10} This cause is before the court upon an appeal and cross-appeal as of right.

*Porter, Wright, Morris & Arthur* and *Karl J. Sutter*, for appellee and cross-appellant.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, for appellant and cross-appellee.

—————————————

**ALICE ROBIE RESNICK, J.**

{¶ 11} In any order granting or denying benefits, the commission must specifically state which evidence and only that evidence it relied upon to reach its conclusion, and briefly explain the reasoning or basis for its decision. This court will not search beyond the face of the commission's order for some evidence to support its decision. *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245; *State ex rel. Basham v. Consolidation Coal Co.* (1989), 43 Ohio St.3d 151, 152, 541 N.E.2d 47, 48; *State ex rel. Frigidaire Div., Gen. Motors Corp. v. Indus. Comm.* (1988), 35 Ohio St.3d 105, 518 N.E.2d 1194, paragraphs one and two of the syllabus; *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 483-484, 6 OBR 531, 533-534, 453 N.E.2d 721, 724.

{¶ 12} In *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.* (1994), 71 Ohio St.3d 139, 142, 642 N.E.2d 378, 380, we made it clear that "the need for adequate evidentiary explanation and identification [is not confined] to questions of pure award or denial of compensation. *All* matters affecting the rights and obligations of the claimant or employer merit an explanation sufficient to inform

the parties and potentially a reviewing court of the basis for the commission's decision." (Emphasis *sic*.)

{¶ 13} Retirement taken before an employee becomes permanently and totally disabled can affect the employee's right to PTD compensation, "if the retirement is voluntary and constitutes an abandonment of the entire job market." *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138, paragraph two of the syllabus. Contrary to Druggan's assertions, the mere fact that an employee is continuously disabled from the date of his injury until the day he retires does not, in itself, render the issue of retirement irrelevant. *Baker* makes clear that the determinative temporal event is the employee's *permanent total* disability. Retirement taken while claimant is disabled, but not *permanently and totally* disabled, may still affect the claimant's eligibility for PTD compensation. Thus, the nature and extent of a claimant's pre-PTD retirement are issues upon which the commission's order must provide adequate evidentiary explanation and identification.

{¶ 14} Druggan applied for retirement on March 22, 1990 and began receiving pension benefits in May 1990. It was not until approximately two years and five months later that a SHO on August 26, 1992, terminated Druggan's TTD compensation and issued an interlocutory order awarding PTD compensation. There is no evidence in the record to indicate that Druggan became permanently and totally disabled prior to his retirement. Druggan purports to have evidence of preretirement PTD by virtue of the report from Dr. Papp dated January 3, 1990, which, Druggan claims, shows that Dr. Papp "had already indicated that 'I do not feel that this patient is capable of sustained gainful employment.'" However, Druggan's quotation is incomplete. Dr. Papp actually stated that he does "not feel that this patient is capable of sustained gainful employment *as a tool and dye* [*sic*] *maker*." (Emphasis added.)

**{¶ 15}** Accordingly, it was incumbent upon the commission to determine whether Druggan's retirement was "voluntary" and whether it "constitute[d] an abandonment of the entire job market," state the evidence on which it relied, and briefly explain the reasoning for its decision.

**{¶ 16}** It was also incumbent upon the commission, in this case, to indicate in its order that it had considered all of the relevant vocational evidence submitted for review. In its April 7, 1993 order, the commission did not recite only that evidence upon which it relied. It also listed the evidence it considered. By so doing, the commission brought upon itself the obligation to indicate that it had indeed considered all relevant vocational evidence. *State ex rel. Lovell v. Indus. Comm.* (1996), 74 Ohio St.3d 250, 252-253, 658 N.E.2d 284, 287; *State ex rel. Balvin v. Youghiogheny & Ohio Coal Co.* (1994), 70 Ohio St.3d 163, 165, 637 N.E.2d 907, 908-909; *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 329, 631 N.E.2d 1057, 1059; *State ex rel. Cupp v. Indus. Comm.* (1991), 58 Ohio St.3d 129, 129-130, 568 N.E.2d 1214, 1215.

**{¶ 17}** The commission's April 7, 1993 PTD order is silent as to the nature and extent of Druggan's retirement and, therefore, is deficient under *Mitchell* and *Noll*. Moreover, the order lists the evidence considered by the commission, but omits the vocational evidence from this list; thus, it is deficient under *Fultz* and *Cupp*. Accordingly, we affirm the appellate court's decision and order the commission to enter a new order which addresses the retirement issue and indicates consideration of the vocational evidence, including the Parman & Associates, Inc. report and Dr. Riccio's February 8, 1993 response thereto. See fn. 2.

**{¶ 18}** Druggan insists, however, that we should examine the transcript of the April 7, 1993 PTD proceedings to find the information we seek instead of remanding the cause. The rules surrounding the need for adequate evidentiary explanation and identification are not to be taken lightly. Their genesis and evolution occurred in response to a persistent bureaucratic problem involving

frustratingly vague orders. Their purpose is a salutary one of ensuring that the parties have notice and the reviewing courts have something meaningful to review. The commission's findings become the basis for allegation of error. Without clarity, the parties are afforded little or no insight into the basis for decision, and the reviewing court is severely hampered in its task of discerning whether the record supports the commission's decision. See, generally, *Noll, supra*; *Mitchell, supra*. We are reluctant, therefore, to relax the requirements and allow the commission to be heard outside the strict confines of the particular order at issue.

**{¶ 19}** This is not to say that there may never be an appropriate case in which to review a transcript of the decisional proceedings in lieu of remand.[3] This, however, is not such a case. While the transcript discloses that three commissioners voted that retirement was involuntary in this case, it fails to disclose the reasoning for this decision, and certainly discloses no commonality in reasoning. Similarly, while the Parman & Associates vocational report was clearly submitted and argued on the record, the transcript does not disclose any questions by the commissioners

---

3. The situation may be different if there were a single SHO who rendered the final determination on the PTD application. In that case, a transcript of the SHO's comments may indeed prove useful in ascertaining the grounds for the order in lieu of remand. In fact, we have required this to be done in the interest of justice where it is necessary to ascertain the basis for a lower court's judgment, despite the rule that the court speaks only through its judgment or journal entry. Thus, we have directed the examination of lower court opinions or decisions, as well as the transcript of proceedings which contain the trial judge's comments, in order to ascertain the reasoning of the court in entering its judgment. *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 551 N.E.2d 172, paragraph one of the syllabus; *A.B. Jac., Inc. v. Liquor Control Comm.* (1972), 29 Ohio St.2d 139, 58 O.O.2d 342, 280 N.E.2d 371, paragraph two of the syllabus; *Pennington v. Dudley* (1967), 10 Ohio St.2d 90, 39 O.O.2d 94, 226 N.E.2d 738, paragraph one of the syllabus; *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390, paragraphs three and four of the syllabus. If the transcript truly reflected the reasoning of the decision-maker on the determinative issues, and contained a statement of evidentiary reliance and/or consideration, it may amount to a vain act to remand the cause to the commission to ascertain that very information. See *State ex rel. Rodriguez v. Indus. Comm.* (1993), 67 Ohio St.3d 210, 214, 616 N.E.2d 929, 932. However, it is unlikely that this could ever occur in the case where the PTD application is considered by five commissioners.

in regard thereto, nor any statements of rejection or indication of consideration. Thus, it is necessary to remand the cause for further consideration.

{¶ 20} In its cross-appeal, Harsco seeks a writ ordering the commission to deny Druggan's PTD application. Harsco claims that there is not "some evidence" in the file to support an award of PTD compensation. In support, Harsco advances two arguments. The first argument is that since Druggan chose a "Normal Retirement Pension," the evidence necessarily reflects that Druggan "voluntarily abandoned any possible desire to return to work at Harsco while he was still temporarily disabled from his work."

{¶ 21} The mere fact of retirement does not *ipso facto* preclude a claimant from receiving compensation. Voluntary retirement will bar compensation, but injury-induced or involuntary retirement will not. See *Baker, supra*, 69 Ohio St.3d 202, 631 N.E.2d 138, paragraphs two and three of the syllabus; *State ex rel. Rockwell Internatl. v. Indus Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678, syllabus; *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535. In order for retirement to preclude PTD compensation, the retirement must be taken before the claimant became permanently and totally disabled, it must have been voluntary and it must have constituted an abandonment of the entire job market. *Baker, supra*, paragraphs two and three of the syllabus.

{¶ 22} Druggan was injured on February 26, 1986. His injury prevented him from returning to his former position at Harsco as a tool and die maker. Druggan had been disabled over a continuous four-year period when he applied for his retirement pension on March 22, 1990. He wrote on his pension application that February 25, 1986, the day before his injury, was the last day he had worked, because of "Workers [*sic*] Comp Disability." These facts constitute some evidence that Druggan's retirement was involuntary or injury-induced.

{¶ 23} Furthermore, there are some questions regarding Druggan's retirement that remain unexplored. Harsco's claim that Druggan's retirement was

voluntary is based on the contention that Druggan chose normal retirement rather than disability retirement. In other words, Harsco reasons that if Druggan retired because of disability, he would have chosen disability retirement. This, of course, assumes that Druggan had a choice, *i.e.*, that disability retirement was an available option. However, the only disability retirement listed as an option on the pension application was "*Permanent* Disability Retirement Pension." (Emphasis added.) As Harsco has so carefully pointed out, however, Druggan was *temporarily* and totally disabled at the time of his application for pension benefits. Thus, depending upon the definition of "permanent" in the pension contract, disability retirement may not have been a viable option, thereby undercutting Harsco's claim that Druggan's retirement was voluntary by virtue of his having rejected that option.

{¶ 24} Moreover, the record is silent as to whether and, if so, when Harsco moved to terminate TTD compensation payments to Druggan. As the record stands, Harsco continued to pay Druggan TTD compensation over the next two and one-half years following Druggan's retirement, with no extent-of-disability motion pending. Yet, if Druggan's retirement was voluntary, that fact alone would have precluded further TTD compensation. Since one would expect Harsco to have attempted in some way to terminate TTD compensation immediately following an employee's voluntary retirement, an inquiry into why it had continued to pay Druggan for another two and one-half years may shed some light on the nature of Druggan's pension retirement.

{¶ 25} Last, regardless of whether Druggan's retirement from Harsco was voluntary, there would still remain the issue of whether it constituted an abandonment of the entire job market.

{¶ 26} In light of the foregoing, we conclude that there is some evidence to support a finding that Druggan's retirement was not voluntary and/or did not constitute an abandonment of the entire job market. Accordingly, we affirm the judgment of the court of appeals as to this issue.

10

**{¶ 27}** Harsco's second argument is that Druggan's application for PTD compensation must be denied because there was no medical evidence attached thereto which could support a finding of PTD. According to Harsco, Dr. Papp's report is not evidence of PTD because he opined only that Druggan was incapable of working as a tool and die maker, and Dr. Guluzian's report is defective because he "continued to repudiate or equivocate his opinion" that Druggan is *permanently* and totally disabled by simultaneously certifying Druggan as *temporarily* and totally disabled. Harsco, however, does not dispute that the other medical evidence in the record supports PTD. Instead, it argues that since former Ohio Adm.Code 4121-3-15(G)(1) (1986-1987 Ohio Monthly Record 917, 919) required medical evidence to be submitted in support of a PTD application, the commission "abused its discretion by processing Druggan's unsupported claim, soliciting further medical evidence from a doctor of its own choosing, and setting the claim for hearing."

**{¶ 28}** Harsco's second argument is fundamentally flawed. First, Harsco points to no rule providing that PTD applications filed without supportive medical evidence are void *ab initio*. Former Ohio Adm.Code 4121-3-15(G)(1) required each PTD application to "be accompanied by medical evidence to support it." 1986-1987 Ohio Monthly Record at 917. It did not require, and Harsco has not cited any authority which requires, that PTD applications must be accompanied by the very medical evidence upon which the commission ultimately relies in granting the application. Absent such authority, there is no reason why the application and accompanying medical evidence cannot trigger the commission's review, allowing the commission to ultimately rely on whatever evidence comes before it at the hearing. Thus, irrespective of whether the evidence attached to Druggan's application supported his claim, the commission had before it some medical evidence to support its decision that Druggan was permanently and totally disabled.

{¶ 29} The second flaw in Harsco's argument is that Dr. Guluzian's simultaneous PTD and TTD opinions are not an example of "equivocation," but of procedural necessity, engendered by compliance with the "*Eaton* docket" procedures. Those procedures necessarily contemplate the filing of C-84s by the attending physician in order to continue TTD compensation pending hearing on the PTD application. The purpose of this procedure, which this court has endorsed, is to enable eligible claimants to begin to receive PTD compensation immediately upon termination of TTD compensation. See *State ex rel. Blake v. Indus. Comm.* (1992), 65 Ohio St.3d 453, 455, 605 N.E.2d 23, 25; *State ex rel. Ford Motor Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 17, 21-22, 599 N.E.2d 261, 265; *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 534 N.E.2d 46. Thus, we decline to find any equivocation in Dr. Guluzian's reports, and instead find his October 2, 1991 report to be some medical evidence of PTD upon which the commission properly relied.

{¶ 30} Accordingly, we find the commission's award of PTD compensation to Druggan to be supported by some medical evidence and affirm the court of appeals as to this issue.

{¶ 31} In light of all the foregoing, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS, J., dissents.

———————————

**DOUGLAS, J., dissenting.**

{¶ 32} I respectfully dissent. I would reverse the judgment of the court of appeals and reinstate the order of the Industrial Commission.

———————————