{¶ 1} Relator, Mackie Thomas, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation on grounds that he voluntarily removed himself from the work force, and to enter an order granting him PTD compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate concluded that there was evidence supporting the commission's determination that relator's retirement from General Motors was voluntary and constituted an abandonment of the entire job market, thereby precluding receipt of PTD compensation.
 {¶ 3} No objections have been filed to the magistrate's decision.
 {¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ is denied.
Writ of mandamus denied
PETREE, P.J., and BOWMAN, J., concur.
 IN MANDAMUS {¶ 5} In this original action, relator, Mackie Thomas, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation on grounds that he voluntarily removed himself from the workforce, and to enter an order granting him PTD compensation.
Findings of Fact:
 {¶ 6} 1. On March 22, 1978, relator sustained an industrial injury while employed as an automobile driver for respondent General Motors Assembly Division ("GM") at the Norwood, Ohio plant. GM is a self-insured employer. Relator would drive a vehicle from the assembly line terminus to the outside parking area and then walk back to the assembly line terminus. The injury occurred when relator slipped and fell to the floor while working at the plant. The industrial claim is allowed for: "contusion right elbow; mild pain left lumbar muscles; herniated disc at L4-5," and is assigned claim number 640171-22.
 {¶ 7} 2. Relator was off work for about three months following the industrial injury. After returning to his job at GM in 1978, he was able to work steadily, even though his back bothered him, until his job was significantly changed apparently toward the end of 1984. At that time, he no longer drove vehicles but only cleaned them. His job required him to more frequently get in and out of a vehicle to vacuum and clean.
 {¶ 8} 3. After working his new job at GM for about one and one-half months, relator asked GM supervision for a change of job duties because his back was bothering him more. Relator's treating doctor, Warren G. Harding, III, M.D., restricted the amount of standing that he could do. Because a job could not be found at GM that met Dr. Harding's restrictions, GM began paying relator temporary total disability ("TTD") compensation as of January 28, 1985.
 {¶ 9} 4. Relator was paid TTD compensation by GM from January 28, 1985 until the effective date of his retirement on August 1, 1987.
 {¶ 10} 5. On January 20, 1987, relator saw Dr. Harding who wrote: "Doing well, needs 4 mos. for '30 yrs.'" Dr. Harding also wrote: "RTW 7/1/87."
 {¶ 11} 6. On February 19, 1987, relator again saw Dr. Harding who wrote: "RTW — 7/1/87."
 {¶ 12} 7. On April 3, 1987, relator again saw Dr. Harding who wrote: "Plans to ret[ire] in 8/87?"
 {¶ 13} 8. On or about August 1, 1987, relator returned to the GM plant to apply for retirement benefits.
 {¶ 14} 9. On August 6, 1987, relator was examined, at GM's request, by orthopedic surgeon, Samuel P. Todd, Jr., M.D. Dr. Todd reported:
 {¶ 15} "* * * He has not worked now for about 2½ years. He tells me that he actually retired from G.M. several months ago but not on a medical disability. * * *
 {¶ 16} "* * * I feel Mr. Thomas did have a ligamentous injury to his back and probably to his right arm and shoulder. The arm and shoulder are no particular problem to him. I think at the present time he is going on an[d] developing some degenerative arthritic changes in the low back and perhaps some mild spinal stenosis. I am also concerned about the fact that he does not have any pulses in his feet and has cold feet. He may be developing an arterial problem in both legs, which is of course in no way related to his industrial claim.
 {¶ 17} "I do not feel Mr. Thomas will function at a job that involves climbing in an[d] out of cramped quarters, such as autos, being on his feet constantly or bending and twisting or lifting things that weigh in excess of 30 pounds. He states that the reason he could not function any longer as [sic] his job as a clean up person on the assembly line was that he could not stand and could not bend and twist to get in awkward positions. I would say he is not going to return to his job as he describes this to me on a permanent basis. I don't think he could do that type of work now. I think that he could do lighter, restricted, sitting down jobs with no particular problem. I think he could do a job that involved both sitting and standing or when he would have to stand, only two or three hours during the eight hour work day on an intermittent basis. I think his lifting should be limited to things under 30 pounds and that he should not be given a job that involves working in cramped quarters. I feel his condition has become permanent. I think he should also have his vascular status in the legs checked, as this may be playing some part in his symptomatology."
 {¶ 18} 10. On March 18, 1988, relator was examined by commission specialist E. Vance Walters, D.O. Dr. Walters reported: "The industrial injury does prevent the claimant from returning to his former position of employment. * * * The claimant is not prohibited from engaging in sustained remunerative employment."
 {¶ 19} 11. On December 7, 1988, Dr. Harding wrote:
 {¶ 20} "* * * Mr. Thomas was most recently evaluated on July 26, 1988 continuing to have intermittent pain and a stiff feeling in his back resolved primarily by activity modification and taking no current medication. Examination of the area revealed no area of deformity, tenderness, muscle spasm or loss of motion, strength or sensation.
 {¶ 21} "I advised him at that time to continue essentially the same program and return again in one year, taking Motrin as needed, 800 mg. three times a day with flare ups.
 {¶ 22} "Overall I feel that Mr. Thomas has developed a more central lower back problem and the diagnosis of a herniated disc at the L-4 and L-5 level is certainly reasonable and probably related to his original strain of the lumbar paraspinal muscles."
 {¶ 23} 12. GM closed its Norwood plant in 1988, and the plant was torn down. Because of this, GM was unable to produce relator's retirement application and other records relating to the retirement.
 {¶ 24} 13. Relator did not apply for or receive TTD compensation after his retirement from GM in August 1987. He also did not pursue other employment after his retirement. Relator was 57 years of age at the time of his retirement at GM.
 {¶ 25} 14. In the meantime, on October 25, 1988, relator was granted an increase in his permanent partial disability ("PPD") to 35 percent. On March 9, 1992, relator was granted a one percent increase in his PPD.
 {¶ 26} 15. On January 27, 1998, some ten years after his retirement at GM, relator filed an application for PTD compensation. He was 67 years old at that time.
 {¶ 27} 16. In support of his PTD application, relator submitted a report, based upon a January 7, 1998 examination by chiropractor Peter J. Fagerland, D.C. Dr. Fagerland wrote:
 {¶ 28} "OPINION: Based on the allowed conditions and the AMA Guide To the Evaluation of Permanent Impairment, Fourth Edition, I find the following: With regards to the above referenced injuries, Mr. Thomas was previously recognized to have a 36% permanent partial impairment for his injury.
 {¶ 29} "Based upon Mr. Thomas's age, education, work history, current and permanent physical limitations and employment background as well as the cumulative effects of the injuries and their residuals, I feel that Mr. Thomas is permanently and totally disabled and is not capable of finding or sustaining any form of remunerative employment whatsoever."
 {¶ 30} 17. On June 3, 1998, relator was examined by commission specialist and orthopedic surgeon, Wayne C. Amendt, M.D. Dr. Amendt reported:
 {¶ 31} "The claimant has reached a state of maximum medical improvement. His whole person impairment, based upon the AMA Guides to Evaluation of Impairment, Edition IV, is rated as follows. Contusion right elbow — 0%, mild pain left lumbar muscles — 0%, herniated disk L-4-5 — 20% (DRE Lumbosacral Category IV). The claimant's occupational activities capacity would be rated at sedentary. The claimant is incapable of resuming his former position of employment. The claimant is capable of engaging in sustained remunerative work activity in a sedentary setting, however[,] since the claimant also demonstrates findings consistent with spinal stenosis, in this examiner's opinion, a non-allowed and unrelated condition [sic]."
 {¶ 32} 18. Following an August 4, 1999 hearing, an SHO issued an order denying relator's PTD application solely on grounds that relator had voluntarily removed himself from the workforce. The SHO's order states:
 {¶ 33} "The Staff Hearing Officer finds that the claimant took a voluntary regular retirement from General Motors, effective 8/1/97. The Staff Hearing Officer finds that the claimant retired at age 57 after he had 30 years of work service in with General Motors.
 {¶ 34} "The Staff Hearing Officer finds the medical report and office records of Dr. Harding particularly office notes of 1/20/87, 4/3/87 and 8/27/87 support the finding that claimant's retirement from General Motors was a voluntary regular retirement and not a disability retirement.
 {¶ 35} "The Staff Hearing Officer finds that the claimant, by his regular retirement, voluntarily removed himself from the work force. Therefore the Staff Hearing Officer finds that the claimant is not permanently and totally disabled.
 {¶ 36} "This order is based on medical reports and office notes of Dr. Harding, evidence on file and evidence adduced at hearing."
 {¶ 37} On October 23, 2000, relator filed in this court a mandamus action which was assigned case number 00AP-1202. The action resulted in this court's judgment of August 6, 2001, stating:
 {¶ 38} "* * * [I]t is the judgment and order of this court that a limited writ of mandamus issue against respondent, Industrial Commission of Ohio, to vacate its order that denied relator's application for permanent total disability compensation and to issue a new order which decides whether relator's retirement is voluntary or involuntary in accordance with State ex rel. Kinnear Div., Harsco Corp. v. Indus. Comm. (1997), 77 Ohio St.3d 258, and the Ohio Administrative Code. Depending on the commission's resolution of this issue, it may need to proceed to consider relator's application on the merits. * * *"
 {¶ 39} 20. On October 3, 2001, the commission vacated the August 4, 1999 SHO's order and referred the PTD application for the scheduling of a new hearing.
 {¶ 40} 21. Following a November 13, 2001 hearing, an SHO issued an order denying the PTD application. The SHO's order of November 13, 2001 states:
 {¶ 41} "The Staff Hearing Officer finds that the claimant's Application for Permanent Total Disability Compensation filed 01/27/98 is denied as the claimant voluntarily retired from his employment and therefore is precluded from receiving permanent total disability compensation pursuant to OAC 4121-3-34(D)(1)(d).
 {¶ 42} "The Staff Hearing Officer has reviewed the case of State ex. rel. Kinnear Div., Harsco Corp. v. Indus. Comm. (1997) Ohio St. 3rd 258, 264 in which the court held 'in order for retirement to preclude permanent total disability compensation, retirement must be taken before the claimant became permanently and totally disabled, it must have been voluntary, and it must have constituted an abandonment of the entire job market.'
 {¶ 43} "A review of the medical records in file does not document any evidence which would indicate that the claimant was permanently and totally disabled prior to the claimant's retirement on 08/01/87.
 {¶ 44} "A review of the office notes of the claimant's attending physician, Dr. Harding, prior to the claimant's 08/01/87 retirement does not indicate that the claimant was permanently and totally disabled and in fact gives a return to work date of 07/01/87. The 01/20/87 report from Dr. Harding indicated that the claimant was doing well and needs only four months for '30 years'. The 04/03/87 note from Dr. Harding indicates that the claimant planned to retire in August 1987.
 {¶ 45} "After the claimant retired on 08/01/87, the claimant was examined 26 days later by Dr. Samuel Todd. Dr. Todd indicated his opinion that the claimant would not be able to function at jobs that involved crawling in and out of cramped quarters such as autos, being on his feet constantly or bending or twisting or lifting things that weigh in excess of 30 pounds. Dr. Todd stated that it was his opinion that he did not think the claimant could return to his job which involved getting in and out of autos, bending and twisting on a constant basis. Dr. Todd indicated, however, that the claimant would be able to be employed in a position that involved both sitting and standing, or when the claimant would have to stand, only two to three hours in an eight hour workday on an intermittent period. He stated that the claimant should not lift objects weighing over 30 pounds and should not be given a job that involves working in cramped quarters. He stated that these restrictions would be permanent in nature. Dr. Todd specifically stated in his report that the claimant '_tells me that he actually retired from GM several months ago, but not on a medical disability.'
 {¶ 46} "The claimant was examined by Dr. Walters at the request of the Industrial Commission on 03/18/88. Dr. Walters indicated that the claimant would not be able to return to his former position of employment which involved cleaning of cars for delivery which involved getting in and out of cars at a rate of one car every 1-1/2 minutes. The doctor noted that the job involved twisting and bending and produce[d] increased back discomfort for the claimant. Dr. Walters specifically stated in the history portion of his report that the claimant stated that he had been 'off of work for almost two years with no job being found and that he finally took his 30 year retirement seven months ago'.
 {¶ 47} "Dr. Walters found that on evaluation there were no major complaints or clinical findings with regards to the claimant's elbow. Dr. Walters indicated with regard to the claimant's low back, although the claimant had subjective complaints, the claimant showed no neurological deficits and that the claimant had presence of Achilles and plantar reflexes and no extensor weakness. Dr. Walters indicated that the claimant had no sensory loss to the posterior aspect of his legs and no major atrophy was present in either the thigh or the calf and there was no major lumbar nerve root involvement although the doctor found that there was a slight bowstring on the right as compared to the left with some evidence of lumbar nerve root irritation. Dr. Walters completed his report by stating that the claimant was not prohibited from engaging in sustained remunerative employment.
 {¶ 48} "In December 1988, the claimant's physician, Dr. Harding examined the claimant and found no area of deformity, tenderness, muscle spasm or loss of motion, strength or sensation and that the claimant was advised to return to see Dr. Harding in one year. Dr. Harding indicated that the claimant would have intermittent pain and stiff feeling in his low back that would resolve primarily by activity modification.
 {¶ 49} "The Staff Hearing Officer finds that the claimant took a regular retirement at the employee's option effective 08/01/87. The retirement was noted to be a regular retirement rather than a medical retirement.
 {¶ 50} "Subsequent to that retirement, the claimant did not file an application for permanent total disability benefits or temporary total benefits. In fact, the claimant filed two permanent partial disability benefit applications, the first being 12/22/88. The Staff Hearing Officer finds that the claimant's lack of permanent total disability application, filed at or near the time of the claimant's retirement on 08/01/87 would tend to indicate that the claimant['s] retirement was due [to] factors other than the claimant's industrial injury and the allowed conditions in his claim.
 {¶ 51} "A review of the file does not demonstrate that the claimant engaged in any type of job search subsequent to his retirement on 08/01/87. Such a job search would indicate that the claimant was still interested in engaging in employment activities. A lack of such a job search as well as a lack of other evidence demonstrating a desire to be employed indicates an abandonment by the claimant of the entire job market.
 {¶ 52} "A review of the medical evidence at or near the time of the claimant's retirement when viewed in its totality, in conjunction with the lack of medical evidence at the time documenting a finding of permanent total disability, leads the Staff Hearing Officer to conclude that the claimant voluntarily retired from work. This voluntariness in conjunction with a finding that the retirement constituted an abandonment of the entire job market, leads the Staff Hearing Officer to find that the claimant's retirement precludes the payment of permanent total disability compensation.
 {¶ 53} "The medical reports of Dr. Walters, Todd and Harding which document the claimant's medical condition at or near the time of his retirement [sic]."
 {¶ 54} 22. On March 6, 2002, relator, Mackie Thomas, filed this mandamus action.
Conclusions of Law:
 {¶ 55} The commission determined that relator's retirement from GM was voluntary and constituted an abandonment of the entire job market, thus precluding receipt of PTD compensation. The issue here is whether the reasoning and evidence relied upon support the commission's determination.
 {¶ 56} Finding that the commission's determination is supported by the reasoning presented in its order and by some evidence upon which it relied, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 57} Ohio Adm. Code 4121-3-34(D)(1)(d) states:
 {¶ 58} "If, after hearing, the adjudicator finds that the claimant voluntarily removed himself from the work force, the claimant shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the claimant's medical condition at or near the time of removal/retirement."
 {¶ 59} Paragraphs two and three of the syllabus of State ex rel. Baker v. Indus. Comm. (1994), 69 Ohio St.3d 202, state:
 {¶ 60} "An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market. * * *
 {¶ 61} "An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement. * * *"
 {¶ 62} The syllabus of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, states:
 {¶ 63} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision."
 {¶ 64} In State ex rel. Kinnear Div., Harsco Corp. v. Indus. Comm. (1997), 77 Ohio St.3d 258, 261, the court made it clear that the commission's determination under Baker regarding the voluntariness of a retirement must comply with Noll.
 {¶ 65} Here, the commission's reasoning boils down to this: relator took a regular, rather than a medical, retirement from GM on August 1, 1987, pursuant to his plan to retire upon attaining 30 years with GM; notwithstanding a medical ability to perform sustained remunerative employment other than the former position of employment at or near the time of retirement, relator did not work or search for work during the next ten years or so before he filed for PTD compensation. Also, there is no evidence that relator was PTD prior to applying for retirement.
 {¶ 66} The above reasoning as summarized, if supported by some relied upon evidence, supports the commission's determination that the retirement was voluntary and constituted an abandonment of the entire job market.
 {¶ 67} State ex rel. McAtee v. Indus. Comm. (1996),76 Ohio St.3d 648, is instructive in this regard. Many years after suffering a knee injury that resulted in several unsuccessful surgeries and ultimately a fusion operation that left him unable to bend the knee at all, McAtee retired from his employment at Chrysler Corporation at age 62. Given the option of "permanent total disability retirement" and "early retirement at employee option," McAtee chose the latter. McAtee also applied for regular, not disability, Social Security benefits at that time. McAtee filed for PTD compensation two years after his retirement from Chrysler. He did not seek other employment following his departure from Chrysler.
 {¶ 68} The McAtee court stated: "His early retirement and receipt of Social Security benefits, his application for pension benefits, and his failure to seek other employment following his departure from Chrysler, all demonstrate his intent to leave the labor force." Id. at 651.
 {¶ 69} McAtee indicates that the commission here did not abuse its discretion in its reasoning by placing significance upon the factors identified in the order such as the type of retirement taken and the failure to seek other employment after the retirement.
 {¶ 70} Moreover, this court can take notice that 30 years of service is often a benchmark for regular retirement in employer-sponsored plans. The commission apparently understood the evidence in that light. Relator's retirement at the 30 year benchmark tended to show a voluntary retirement rather than an injury-induced retirement.
 {¶ 71} The magistrate further notes that there is no real dispute here that the factual basis of the commission's reasoning is supported by some evidence. That relator actually took a 30 year regular retirement rather than a medical retirement is supported by the medical reports of Drs. Harding, Todd and Walters who reported their conversations with relator regarding his retirement.
 {¶ 72} Moreover, while he claims that the retirement was injury induced, relator has never claimed that the retirement was not a regular retirement.
 {¶ 73} There is also no factual dispute here that relator did not work or search for work following his retirement at GM.
 {¶ 74} Relator challenges the commission's determination regarding the retirement by emphasizing that he received TTD compensation for approximately two and one-half years prior to his retirement and that he was medically unable to return to his former position of employment at the time of his retirement. Relator contends that the commission failed to consider those factors generally favorable to his position in reaching its determination. The magistrate disagrees that the commission abused its discretion with respect to those factors which might be viewed as favorable to relator's position.
 {¶ 75} In Kinnear Div., supra, the court states:
 {¶ 76} "* * * Contrary to [the claimant's] assertions, the mere fact that an employee is continuously disabled from the date of his injury until the day he retires does not, in itself, render the issue of retirement irrelevant. Baker makes clear that the determinative temporal event is the employee's permanent total disability. Retirement taken while claimant is disabled, but not permanently and totally disabled, may still affect the claimant's eligibility for PTD compensation. Thus, the nature and extent of a claimant's pre-PTD retirement are issues upon which the commission's order must provide adequate evidentiary explanation and identification." (Emphasis sic.) Id. at 261
 {¶ 77} The commission's failure to state in its order that relator received TTD compensation for approximately two and one-half years up to the date of his retirement does not flaw the commission's reasoning in finding the retirement to be voluntary and an abandonment of the entire job market. Noll's requirement that the commission briefly state its reasoning does not require it to explain why factors that might be viewed as favorable to the opposite conclusion were not found persuasive, particularly where those factors do not themselves compel a conclusion opposite of that reached by the commission.
 {¶ 78} Clearly, the commission's determination that relator's retirement was voluntary and constitutes an abandonment of the entire job market complies with Noll.
 {¶ 79} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.