DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Navistar International Transportation Corporation, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding temporary total disability ("TTD") compensation to respondent, Parst L. Harbour ("claimant"), and to issue a new order denying said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate its order and to hold a new hearing, and issue an order granting or denying the requested TTD compensation. (Attached as Appendix A.) Both claimant and the commission have filed objections to the magistrate's decision.
 {¶ 3} Claimant first objects to the magistrate's finding that the commission abused its discretion in removing a C-84 report, dated December 21, 2001, from evidentiary consideration. The commission found the C-84, prepared by Dr. Jonathan J. Paley, to be inconsistent.
 {¶ 4} The form at issue asks several questions, and the physician is required to check "yes" or "no" in the appropriate box. Dr. Paley checked "no" to inquiries whether the injured worker: (1) is "able to return to this position of employment"; (2) is "able to return to other employment including light duty, alternative work, modified work or transitional work"; (3) has reached maximum medical improvement ("MMI"); and (4) is a candidate for vocational rehabilitation services; however, Dr. Paley also designated on the form an "actual" return to work date of "01/01/02."
 {¶ 5} The magistrate, in holding that the commission's stated basis constituted an abuse of discretion, found "no contradiction in a physician's identifying a return-to-work date in thefuture on the same form with a statement of current TTD until that future date." (Emphasis sic.) Upon review, we disagree with the magistrate's finding that the commission abused its discretion.
 {¶ 6} As noted above, Dr. Paley filled out the C-84 on December 21, 2001, indicating that claimant was unable to return to his former position of employment or any modified employment, and that he had not yet attained MMI. Although Dr. Paley marked an "actual" (rather than an "estimated") return-to-work date of January 1, 2002, we do not find that the commission was required to interpret that notation as evidence the physician was automatically releasing claimant to work on that date, especially in light of: (1) the length of time between the date of the C-84 and the "actual" return to work date of January 1, 2002; (2) the fact that Dr. Paley did not release claimant to his former position of employment or any light duty, modified or alternative work; and (3) Dr. Paley's office note, dated December 17, 2001, in which the physician opines that claimant will not be able to return to his previous job. Moreover, to the extent the C-84 report was susceptible to more than one possible interpretation, it was within the commission's discretion to conclude the C-84 was not some evidence that the physician was releasing claimant to his former position of employment. State ex rel. Jeep Corp.v. Indus. Comm. (1991), 62 Ohio St.3d 64, 67 (commission not bound by employer's interpretation of evidence; while nothing on C-84 form specifically inquired whether condition was temporary, commission was free to interpret C-84 as supporting conclusion that claimant's condition remained temporary). We therefore sustain claimant's first objection.
 {¶ 7} Claimant next objects to the magistrate's conclusion that the commission abused its discretion in relying on subsequent C-84 reports by Dr. Paley in awarding claimant TTD compensation from January 2, 2002 through August 5, 2002. The magistrate found a "variety of inconsistencies between Dr. Paley's different opinions." First, the magistrate noted that, in December (actually November) of 2001, Dr. Paley opined that claimant would reach MMI by January 20, 2002, but the physician subsequently opined that claimant had not reached MMI as of March 2002, and later opined that claimant had not reached MMI as of August 2002; however, as noted in the order of the staff hearing officer ("SHO"), dated July 16, 2002, Dr. Paley stated in the November 29, 2001 letter: "I anticipate that Mr. Harbour will reach maximum medical improvement at some point in January. Ianticipate an affective [sic] maximum medical improvement date of January 20, 2002." (Emphasis added.) In considering the physician's statements, the SHO concluded that "`anticipation' equals `estimate' and should be given no greater weight."
 {¶ 8} We agree with claimant that the commission could have concluded that Dr. Paley's "anticipate[d]" date of MMI was not a definite statement of MMI sufficient to preclude further TTD compensation. Further, the C-84's completed by Dr. Paley on March 20, May 16, and August 9, 2002, all included notations that claimant had not reached MMI. We therefore find no abuse of discretion by the commission in relying upon those reports to award TTD compensation.
 {¶ 9} The magistrate found "[a]nother inconsistency [in] that, although Dr. Paley stated in December 2001 that claimant could return to work on January 1, 2002, he stated some weeks later that claimant could not work on that date, but he gave no explanation for this change of opinion." (Emphasis sic.) However, we have previously determined that the commission was not required to interpret the December 2001 C-84 as a release to work, and we find no inconsistency between that report and subsequent reports stating that claimant remained temporarily and totally disabled. Furthermore, the C-84 reports of Dr. Paley, referenced above, constitute some evidence by which the commission could have found that claimant remained TTD through August 5, 2002.
 {¶ 10} Accordingly, claimant's second objection is sustained.
 {¶ 11} Claimant's third objection and the commission's second objection are interrelated and will be addressed together. Both parties challenge the magistrate's determination that the commission abused its discretion in failing to consider whether claimant refused suitable work made available to him pursuant to a written document. The magistrate found in part that "the employer presented evidence of a writing under which alternative work was available to injured workers within their medical restrictions," and further, that "there was evidence that the employer offered suitable work via a writing and that the worker in effect refused it by failing to make any request as set forth in the union contract."
 {¶ 12} At the outset, we note that the record contains no evidence that a written job offer was ever made to claimant. As purported evidence of a written offer, the magistrate appears to have relied upon the affidavits of relator's employees, David Espinosa and Debbie Sule, in which both affiants cite to a collective bargaining agreement governing the workers at relator's facility. In his affidavit, Espinosa states in part:
While Mr. Harbour never presented restrictions to me, assuming that he would have had restrictions that would have prevented him from using his right upper extremity for lifting or over the shoulder activity, * * * our records reflect that a sub-assembly position called "wire and trim" * * * would have met his restrictions and been available to him * * *.
 {¶ 13} Upon review, we agree with the commission that those affidavits contain no mention of a written job offer that would satisfy the requirements of Ohio Adm. Code 4121-3-32(B)(d), which provides in part that TTD may be terminated "[u]pon the finding of a district hearing officer that the employee has received a written job offer of suitable employment." Further, in order for a job offer to be sufficient to terminate TTD compensation, "it must be clear that the job is indeed within claimant's restrictions," and such offer must identify the position being offered and describe the duties. State ex rel. ProfessionalRestaffing of Ohio, Inc. v. Indus. Comm., 152 Ohio App.3d 245,2003-Ohio-1453, at ¶ 4, citing State ex rel. Coxson v. DairyMart Stores of Ohio, Inc. (2000), 90 Ohio St.3d 428.
 {¶ 14} In the instant case, the affidavits set forth after-the-fact statements, absent any medical restrictions by claimant's treating physician, "assuming" the restrictions claimant "would have had," and purporting to describe an available job that would have met those assumed restrictions. Here, the record fails to suggest that claimant was offered a job consistent with his treating physician's medical restrictions, and we reject the magistrate's conclusion that the commission abused its discretion in failing to consider whether claimant refused suitable work made available to him.
 {¶ 15} Accordingly, claimant's third objection and the commission's second objection are sustained.
 {¶ 16} Claimant's fourth objection and the commission's first objection will also be considered together. Under these objections, both parties assert that the magistrate incorrectly determined that the commission abused its discretion in considering the due process argument raised by relator.
 {¶ 17} Relator argued before the magistrate that the SHO abused its discretion by issuing an order that went beyond the bounds of relator's appeal from the order of the district hearing officer ("DHO"). The magistrate determined that the commission "addressed only the question of whether the hearing notice adequately described the matters to be addressed in the hearing," but that the commission had "failed to rule on the issue of whether it had authority to hear and decide the broad issue addressed in its order, given that claimant had failed to appeal the DHO order." The magistrate concluded that a writ was warranted to return the matter to the commission to address that issue.
 {¶ 18} At the outset, we agree with claimant that a review of the stipulated record does not indicate that relator raised before the commission the issue of the commission's administrative scope of review. Rather, the only issue raised by relator appears to have been sufficiency of the notice. The commission addressed this question, finding relator's reliance onState ex rel. LTV Steel Corp. v. Indus. Comm. (1995),102 Ohio App.3d 100, to be misplaced. Specifically, the commission found that "the `Notice of Hearing' for the Staff Hearing Officer hearing clearly indicates that the issues to be adjudicated are temporary total disability compensation from 01/02/2002 through 05/02/2002 and extent of disability. Therefore, the Industrial Commission finds the employer was not denied due process."
 {¶ 19} To the extent the magistrate viewed more broadly the issues before the commission, we disagree with the magistrate's determination that this matter must be remanded. As noted, the magistrate deemed a remand necessary in order for the commission to consider whether it had authority to "hear and decide the broad issues addressed in its order, given that claimant had failed to appeal the DHO order." The magistrate viewed, as a matter of first impression, the "question relating to the scope of review in an administrative appeal of a workers' compensation determination." However, in State ex rel. Gibson v. Indus.Comm. (Feb. 24, 1987), Franklin App. No. 85AP-667, affirmed on other grounds (1988), 39 Ohio St.3d 319, this court, in considering former R.C. 4123.516, held that:
R.C. 4123.516 places the order pertaining to the subject of appeal before the Industrial Commission in all of its aspects despite the fact that only one of the parties have filed an appeal and portions of the order pertaining to the subjects of appeal are favorable to the appealing party. The provisions of R.C. 4123.517, which provides for a prehearing conference to define the controverted issues, inferentially support a holding that all issues pertaining to the subject of the appeal, in this case the allowance or denial of temporary total disability compensation, are before the Industrial Commission in its entirety. This situation is comparable to reconsideration pursuant to R.C. 4123.57, where we have held that the Industrial Commission has jurisdiction to consider and modify any aspect of the order from which reconsideration is sought without being limited only to the issues raised by the party seeking reconsideration. State ex rel. Sears, Roebuck Co. v. Indus.Comm. (1981), 1 Ohio App.3d 132.
 {¶ 20} This court reaffirmed the holding of Gibson inUnited Parcel Serv., Inc. v. Indus. Comm. (Dec. 11, 1990), Franklin App. No. 90AP-321. See, also, Alcorn v. Spalding Evenflo Corp. (1992), 79 Ohio App.3d 561, 567. (The general rule that review by a higher court is limited to specific error committed below and does not include other aspects of the judgment or order appealed from "is not * * * applicable to the review by a higher administrative body of the decision of a lower body or officer within the same administrative system. The higher body may fully reconsider the decision of the lower body, including any matters not specifically alleged to be error by the party who has brought the appeal.") (Emphasis sic.)
 {¶ 21} Based upon the above-cited precedent, even assuming the issue of the commission's administrative review was properly raised before the commission, we would not find that the commission exceeded its scope of review in this matter. Accordingly, claimant's fourth objection and the commission's first objection are sustained.
 {¶ 22} Following an independent review, the magistrate's decision is adopted as to the findings of fact contained therein; however, for the reasons set forth in this decision, and having sustained the objections of claimant and the commission, we do not adopt the conclusions of law and recommendation of the magistrate, and the requested writ of mandamus is denied.
Objections sustained; writ of mandamus denied.
Bowman and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Navistar International : Transportation Corporation, : Relator, : v. : No. 03AP-809 Industrial Commission of Ohio : (REGULAR CALENDAR) and Parst L. Harbour, : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 30, 2004 Vorys, Sater, Seymour Pease LLP, Joseph Brunetto andKendra L. Carpenter, for relator.
Jim Petro, Attorney General, and Jacob Dobres, for respondent Industrial Commission of Ohio.
Connor Behal, LLP, Kenneth S. Hafenstein, Daniel D.Connor, and Lori M. DiRenzo, for respondent Parst L. Harbour.
 IN MANDAMUS {¶ 23} In this original action in mandamus, relator, Navistar International Transportation Corporation ("Navistar"), seeks a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order awarding compensation for temporary total disability ("TTD") and to issue a new order denying the requested compensation.
Findings of Fact:
 {¶ 24} 1. In January 2001, Parst L. Harbour ("claimant") sustained an industrial injury. His workers' compensation claim was allowed for aggravation of preexisting avascular necrosis of the glenohumeral joint of the right shoulder.
 {¶ 25} 2. On April 19, 2001, claimant had surgery for the condition, and he received TTD during his recuperation from surgery and rehabilitation. After surgery, claimant engaged in lengthy physical therapy.
 {¶ 26} 3. In August 2001, Jonathan J. Paley, M.D., submitted a C-84 form certifying TTD from August 18, 2001 to October 18, 2001, noting under "objective clinical findings" that claimant was recovering from surgery.
 {¶ 27} 4. On September 24, 2001, Dr. Paley submitted a C-84 form certifying TTD from October 18, 2001 to an estimated return-to-work date of December 18, 2001. The objective clinical findings were "Improved Range of Motion," and the subjective findings were "Pain."
 {¶ 28} 5. On November 29, 2001, Dr. Paley sent a narrative report to Navistar explaining that the surgical procedure claimant underwent — a right shoulder hemiarthroplasty — requires approximately nine to ten months of post-operative rehabilitation. Accordingly, Dr. Paley stated that he anticipated maximum medical improvement ("MMI") on January 20, 2002.
 {¶ 29} 6. Claimant had 35 years seniority at Navistar, and under the collective bargaining agreement, he had the right to take any job within his residual functional capacity, bumping an employee with less seniority, if he chose to exercise this right.
 {¶ 30} 7. According to Navistar, it could not select another worker's position and offer it to claimant because that would violate the bargaining agreement; the agreement gives the right to the more senior employee to claim the job held by a more junior employee, but does not give Navistar the right to take a person's job and offer it to the more senior employee. Under the agreement, once an injured worker indicates his desire to exercise his "bumping rights" to secure a position within his physical capacity, the employer is then contractually obligated to give the job to the injured worker.
 {¶ 31} 8. On November 29, 2001, Dr. Paley requested a full functional capacity evaluation. According to Debbie Sule, an employee at Navistar, the employer scheduled the functional capacity evaluation as requested by Dr. Paley.
 {¶ 32} 9. On December 17, 2001, Dr. Paley examined claimant. Neurologically, the shoulder was intact, and axilary nerve function was satisfactory. Rotational motion was satisfactory, but claimant lacked significant overhead range of motion. Rotator cuff strength was diminished, and there was some residual discomfort. Dr. Paley recommended no further treatment or physical therapy. He concluded:
* * * [The claimant] does not feel that he is able to return to his previous job and I agree. I did discuss that there would be other less demanding jobs at Navistar that might be available for him. * * *
Last, Dr. Paley noted claimant's statement that he planned to take retirement at the end of December.
 {¶ 33} 10. According to David Espinosa at Navistar, there was a job that would have accommodated the most restrictive limitations for the shoulder and which claimant had sufficient seniority to claim. According to Mr. Espinosa, a subassembly position called "wire and trim" did not require any use of the right upper extremity to do lifting or to perform over-the-shoulder activity, and was available to him.
 {¶ 34} 11. According to Ms. Sule, claimant informed her that he did not want any job at Navistar, and she therefore cancelled his appointment for the functional capacity evaluation. Ms. Sule states that claimant indicated he was voluntarily retiring. Accordingly, a normal length-of-service retirement was processed.
 {¶ 35} 12. Claimant arranged for his retirement from Navistar to be effective on January 2, 2002.
 {¶ 36} 13. On December 21, 2001, Dr. Paley completed a C-84 form stating that claimant was temporarily and totally disabled until an "actual" return-to-work date of January 1, 2002. The objective clinical finding was "diminished range of motion," and the subjective finding was "Pain."
 {¶ 37} 14. On March 20, 2002, Dr. Paley completed another C-84 form, certifying TTD from January 2, 2002 to an estimated return-to-work date of May 2, 2002. The objective clinical finding was "Tenderness," and the subjective finding was "Pain." When asked if claimant had reached MMI, Dr. Paley checked the box stating "No," but when asked to indicate any barriers preventing normal recovery of MMI, he left the space blank.
 {¶ 38} 15. On August 9, 2002, Dr. Paley completed another C-84 form, certifying TTD from July 4, 2002 to an estimated return-to-work date of October 4, 2002. Under "Return to work date," claimant entered "Retired." Dr. Paley's objective clinical finding was "diminished rotator [c]uff strength," and no subjective findings were listed. When asked if claimant had reached MMI, Dr. Paley checked the box stating "No," but when asked to indicate any barriers preventing normal recovery of MMI, he left the space blank.
 {¶ 39} 16. On May 16, 2002, Dr. Paley completed another C-84 form, certifying TTD from May 3, 2002 to an estimated return-to-work date of July 3, 2002. The objective clinical finding was "diminished rotator Cuff Strength," and the subjective findings were "Pain." When asked if claimant had reached MMI, Dr. Paley checked the box stating "No," but when asked to indicate any barriers preventing normal recovery of MMI, he left the space blank.
 {¶ 40} 17. In May 2002, a district hearing officer ("DHO") issued the following order, granting the requested TTD in part:
The District Hearing Officer orders that temporary total disability compensation be awarded from 01/02/2002 through 01/19/2002 (closed period).
The District Hearing Officer further orders that the claimant's request for temporary total disability compensation from 01/20/2002 through today's date of hearing (05/21/2002) be denied.
The District Hearing Officer finds that the claimant has reached maximum medical improvement with respect to the allowed conditions in this claim as of 01/20/2002. Pursuant to the 11/29/2001 narrative report signed by claimant's attending physician (Jonathan J. Paley, M.D.) the date of maximum medical improvement is 01/20/2002. The 01/20/2002 date of MRI coincides, in Dr. Paley's opinion, with the nine to ten month rehabilitation for right shoulder hemiarthroplsty [sic].
The District Hearing Officer does not find evidence of new and changed circumstances sufficient to restart temporary total disability compensation following 01/20/2002. The District Hearing Officer has reviewed all evidence in the claim file including the C-84 signed by Dr. Paley on 03/20/2002, for evidence that the claimant's allowed conditions have again become temporary in nature following the date of maximum medical improvement. No recommendation for physical therapy or other conservative treatment has been made by claimant's attending physician. In fact, Dr. Paley states in his (05/08/2002 office note) that he is only recommending "continuation of all exercise, medications, icing, and a follow-up visit in a few weeks time."
The District Hearing Officer does not find that the claimant voluntarily abandon[ed] his former position of employment on 01/02/2002 when he retired after approximately 35 years of work as a press operator. The claimant testified at hearing that he would increase his monthly retirement benefits by approximately forty dollars for each year that he work[ed] following his 35 year work history. The claimant also testified that he had plan[n]ed to work three or four years following this injury but he is prevented from doing so by the allowed conditions in this claim. As such, the District Hearing Officer finds that the claimant's retirement was involuntarily injury-induced. As such, temporary total disability compensation is payable from 01/02/2002 through 01/19/2002.
(Emphasis sic.)
 {¶ 41} 18. The employer appealed on the issue of abandonment of employment.
 {¶ 42} 19. In July 2002, the employer's appeal was heard by an SHO, who stated that the DHO order "is affirmed" and that the employer's appeal was, therefore, denied. The SHO reasoned as follows:
The District Hearing Officer granted a closed period of temporary total disability compensation ending on 01/19/2002, based on Dr. Paley's opinion, expressed in a letter dated 11/29/2001, that "I anticipate an [e]ffective maximum medical improvement date of January 20, 2002." The Staff Hearing Officer finds that "anticipation" equals "estimate" and should be given no greater weight.
Therefore, based on the 03/20/2002 C-84 by Dr. Paley, temporary total disability compensation is ordered paid from date of last payment through 05/02/2002 and to continue on submission of medical evidence of continued temporary total disability.
The claimant did not voluntarily abandon his former position of employment by his retirement. Based on claimant's credible statements at hearing, the Staff Hearing Officer finds that the claimant would have continued to work for "several more years", but for the injury. Therefore[,] the claimant's retirement can not be said to be voluntary.
 {¶ 43} 20. The employer's further appeal was accepted, and the members of the commission issued the following order:
* * * [T]he order of the Staff Hearing Officer, dated 07/16/2002, is vacated.
The employer's representative argued that the employer was denied due process when on 07/16/2002, the Staff Hearing Officer, vacated the District Hearing Officer's order, dated 05/31/2002, which denied temporary total disability compensa-tion after 01/20/2002 and found maximum medical improvement, despite the fact that the employer, not the injured worker, appealed that order. In other words, the employer contends it did not have notice that the Staff Hearing Officer would rule on the entire period of compensation previously considered by the District Hearing Officer.
In support of its position, the employer relies on State exrel. LTV Steel Corp. v. Indus. Comm. (1995),102 Ohio App.3d 100, wherein the Court of Appeals remanded a claim back to the Industrial Commission because a hearing officer granted temporary total disability compensation at a hearing for which no notice of the issue of temporary total disability compensation had been provided to the parties.
The Industrial Commission finds that the Staff Hearing Officer's decision is not inconsistent with LTV Steel. In this case, the "Notice of Hearing" for the Staff Hearing Officer hearing clearly indicates that the issues to be adjudicated are temporary total disability compensation from 01/02/2002 through 05/02/2002 and extent of disability. Therefore, the Industrial Commission finds the employer was not denied due process.
The Industrial Commission finds that the injured worker has sustained his burden of proving that he was temporarily and totally disabled from 01/02/2002 through 08/05/2002. The preponderance of the evidence demonstrates that the injured worker was unable to return to work during this period. On C-84 reports dated 03/20/2002, 05/16/2002, and 08/09/2002, Dr. Jonathon Paley certified the injured worker as being temporarily and totally disabled secondary to diminished right rotator cuff strength. Moreover, in office notes dated 03/11/2002 and 05/08/2002, Dr. Paley reported that the injured worker continued to experience improvement in his right shoulder range of motion. Based upon this evidence, the Industrial Commission concludes that the injured worker's disability from 01/02/2002 to 08/05/2002 is related to the allowed conditions in the claim.
The employer contends that the injured worker is not eligible for temporary total disability compensation from 01/02/2002 through 08/05/2002, because Dr. Paley released the injured worker to return to work on 01/01/2002; alternatively, the employer argues that the injured worker voluntarily retired from his former position of employment on 01/02/2002. For the reasons that follow, the Industrial Commission does not find either of these argument persuasive.
Regarding the alleged release to return to work, the Industrial Commission finds that Dr. Paley's 12/21/2001 C-84 report, upon which the employer relies, is not "some evidence" supporting a denial of temporary total disability compensation after 01/01/2002. In this report, Dr. Paley indicates that the injured worker can return to work on 01/01/2002. However, Dr. Paley also indicates that the injured worker is unable to return to his former position of employment or any modified employment and that he has not attained maximum medical improvement for the allowed condition. In light of the internal inconsistencies in the report, the Industrial Commission concludes that Dr. Paley's 12/21/2001 C-84 report cannot be relied upon.
The Industrial Commission further finds that the employer has failed to sustain its burden of proving that the injured worker voluntarily retired from his former position of employment. The injured worker testified that he tendered his resignation for the reason that Dr. Paley informed him that he would never be able to perform his former position of employment because of this injury. Dr. Paley's 12/17/2001 office note corroborates the injured worker's testimony. Moreover, the Industrial Com-mission finds that there is inadequate proof that refutes the injured worker's testimony. The employer asserted that the retirement and pension documents submitted at hearing prove the injured worker took a voluntary retirement. However, the Industrial Commission finds that the documents merely show the injured worker took an" early" retirement, a conclusion that is consistent with the injured worker's testimony that he retired due to the injury. For these reasons, the Industrial Commission concludes that the injured worker did not voluntarily retire from his former position of employment and is not barred from receiving additional temporary total disability compensation in this claim.
Accordingly, it is the order of the Industrial Commission that temporary total disability compensation is awarded from 01/02/2002 through 08/05/2002.
The Industrial Commission additionally finds that the injured worker's condition reached maximum medical improvement 08/05/2002 based on the 10/07/2002 report of Dr. Paley. Therefore, temporary total disability compensation is term-inated as of 08/05/2002.
Conclusions of Law:
 {¶ 44} The employer argues that the commission's order constituted an abuse of discretion. For the reasons set forth below, the magistrate agrees.
 {¶ 45} Under R.C. 4123.56(A), compensation for TTD is awarded during the period of healing and recovery following an industrial injury. E.g., State ex rel. Matlack, Inc. v. Indus. Comm.
(1991), 73 Ohio App.3d 648. Compensation for TTD continues until the disability has become permanent. State ex rel. Ramirez v.Indus. Comm. (1982), 69 Ohio St.2d 630. Under R.C. 4123.56(A), a disability is no longer temporary when it has reached "maximum medical improvement," which is defined as follows:
* * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
Ohio Adm. Code 4121-3-32(A)(1). Accordingly, it is settled that, when medical treatments can provide no further functional or physiological improvement, the claimant has reached MMI and cannot receive further TTD compensation, regardless of whether further medical treatment is necessary.
 {¶ 46} After a claimant has returned to work or reached MMI, circumstances may change. A relapse after a return to work, or a flare-up of an allowed condition, may cause a new period of TTD. R.C. 4123.56(A); State ex rel. Bing v. Indus. Comm. (1991),61 Ohio St.3d 424. In State ex rel. Navistar Internatl. Transp.Corp. v. Indus. Comm. (1993), 66 Ohio St.3d 267, the court ruled that, where TTD had ceased on the basis of a return to work, a relapse could warrant reinstatement of TTD pursuant to R.C.4123.52. Further, disabling surgery for an allowed condition can constitute new and changed circumstances that warrant a period of reinstated TTD until the claimant has recuperated from the surgery. State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158. Further, in order for TTD to be reinstated, the court has made clear that the disability must not only be total (preventing performance of the former position of employment) but must also be temporary (not yet having reached MMI). The claimant has the burden of proving that his disability is both total and temporary. Chrysler.
 {¶ 47} An award of TTD is precluded, however, if the claimant has voluntarily relinquished wages by an action such as resigning his job or refusing a bona fide, written offer of suitable employment. It is well established that, when a loss of wages is caused by a claimant's voluntary actions rather than the industrial injury, the claimant is not eligible for TTD compensation regardless of whether he can show a temporary and total disability. E.g., State ex rel. Baker v. Indus. Comm.
(2000), 89 Ohio St.3d 376.
 {¶ 48} A retirement may be a departure from a particular jobor from the labor market as a whole, and the retirement may be voluntary or involuntary. For purposes of workers' compensation, a departure is not voluntary when caused by the industrial injury. E.g., State ex rel. Baker Material Handling Corp v.Indus. Comm. (1994), 69 Ohio St.3d 202; State ex rel. McAtee v.Indus. Comm. (1996), 76 Ohio St.3d 648; State ex rel. KinnearDiv., Harsco Corp. v. Indus. Comm. (1997), 77 Ohio St.3d 258;State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78. Thus, when there is evidence of retirement and the issue is raised at hearing, the commission must determine whether the person was leaving that position or the entire labor market, and whether the departure was voluntary or involuntary.
 {¶ 49} With respect to medical reports, the magistrate notes that a medical opinion cannot constitute "some evidence" if it is inconsistent or fatally ambiguous. An inconsistent report may be internally inconsistent or inconsistent with the doctor's other reports. E.g. , State ex rel. Owens-Corning Fiberglas Corp. v.Indus. Comm. (1994), 70 Ohio St.3d 263; State ex rel. Eberhardtv. Flxible Corp. (1994), 70 Ohio St.3d 649; State ex rel. Lopezv. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel.Malinowski v. Hordis Bros. Inc. (1997), 79 Ohio St.3d 342;Chrysler, supra,
 {¶ 50} Next, the employer raises a procedural issue regarding administrative appeals. In order to obtain affirmative relief following an adverse order, the aggrieved party must file an administrative appeal. If the other party files an appeal, the hearing is de novo and new evidence may be submitted, but the issues may be limited. Here, the DHO terminated TTD as of January 20, 2002, based on MMI, and claimant did not appeal that order. The only party to appeal was the employer, who sought a reversal only of the abandonment-of-employment ruling.
 {¶ 51} In this action, the magistrate concludes that the commission's order constituted an abuse of discretion in at least three separate respects: (1) its conclusion that the C-84 completed in December 2001 was internally inconsistent and barred from evidentiary consideration; (2) its reliance on Dr. Paley's subsequent medical reports to support the award of TTD compensation; and (3) its failure to distinguish between an involuntary departure from a particular job and an involuntary departure from all jobs at Navistar, including a job or jobs that were made available to him in writing.
 {¶ 52} First, the magistrate finds no internal inconsistency in the C-84 completed in December 2001 that would remove it from evidentiary consideration. The magistrate finds it entirely reasonable for a physician to certify TTD prospectively until a planned return-to-work date. That is, a physician may reasonably identify the date of a planned return to work in ten days as the "actual" return-to-work date rather than labeling it as an "estimated" return-to-work date. Given the composition of the C-84 form, a physician submitting the form prior to the planned return-to-work date must certify that claimant is currently
unable to work but will be able to return to work on a particular date in the near future. The magistrate sees no contradiction in a physician's identifying a return-to-work datein the future on the same form with a statement of current
TTD until that future date. Accordingly, the commission's stated basis was an abuse of discretion.
 {¶ 53} However, there are a variety of inconsistencies between Dr. Paley's different opinions. In his narrative report of December 2001, Dr. Paley states that claimant is nearly at MMI and that there are jobs at Navistar that claimant can perform other than his old job. The fact that, as MMI approached, Dr. Paley made a formal request for a functional capacity evaluation was corroborative of his opinion that claimant, although he had limitations, retained the have capacity for some other type of employment. In contrast, only a few weeks later, Dr. Paley stated on a C-84 form that claimant could not perform any other type of work. However, Dr. Paley never explained why he completely changed his mind.
 {¶ 54} Another inconsistency is that, although Dr. Paley stated in December 2001 that claimant could return to work on January 1, 2002, he stated some weeks later that claimant couldnot work on that date, but he gave no explanation for this change of opinion. It may be that Dr. Paley certified a return to work in January 2002 merely so that claimant could process a normal retirement in January 2002. If that were the case, however, Dr. Paley should have provided a subsequent explanation to support his C-84s, stating that he made a mistake and that he never intended to opine that claimant could actually return to his former position of employment in January 2002. In any event, Dr. Paley's opinions after January 2002 substantially contradict his opinions before January 2002. The commission therefore abused its discretion in relying on the reports.
 {¶ 55} In addition, Dr. Paley opined in December 2001 that claimant would reach MMI by January 20, 2002, and he explained his reason for this opinion. He later stated that claimant had not reached MMI as of March 2002, and then later opined that claimant had not reached MMI as of August 2002. However, he failed to provide any explanation for contradicting his earlier opinion, nor did he report any developments to explain why claimant had not reached MMI. In the absence of some explanation as to what had happened to change his clearly stated opinion, or some statement regarding the type of improvement he expected after January 2002, the about-face in his opinion regarding MMI creates an inconsistency that rendered the reports unreliable.
 {¶ 56} Next, the magistrate addresses the retirement issue. The employer does not dispute that claimant could no longer perform his old job. However, the employer raised the issue that, while claimant's departure from his old job was involuntary, his departure from wage-earning at Navistar altogether was a voluntary choice. Due to the circumstances in this case, it was necessary for the commission to address the question of whether alternative employment within his limitations was made available to claimant, thus making his departure from Navistar a voluntary matter. The use of the term "abandonment of employment" may have clouded the issue, but the employer's essential argument was that it offered claimant suitable employment within his residual functional capacity and that claimant's refusal should have barred further receipt of TTD. The magistrate concludes that the commission had a duty to address this issue.
 {¶ 57} Ohio Adm. Code 4121-3-32 provides for terminating TTD when the injured worker "has received a written job offer of suitable employment." The term "suitable employment" is defined as work "which is within the employee's physical capabilities." The term "job offer" is defined as a "proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence."
 {¶ 58} This provision reflects the overarching principle that an employee who has refused suitable work from his employer should not receive TTD compensation. The rule also reflects the concern that the employer must document the availability of other work in writing so that injured workers are not denied TTD based on informal, undocumented allegations of alternative work.
 {¶ 59} The present situation, however, involved a collective bargaining agreement that controlled the way in which jobs were given to employees for alternative work within their capabilities. Thus, the circumstances do not precisely fit the above-cited provision. Nonetheless, the employer presented evidence of a writing under which alternative work was available to injured workers within their medical restrictions. The employer also presented evidence that there was at least one job that claimant could physically perform within his limitations and that claimant's level of seniority was sufficient to obtain that job. Thus, there was evidence that the employer offered suitable work via a writing and that the worker in effect refused it by failing to make any request as set forth in the union contract. The magistrate concludes that the commission abused its discretion in failing to consider the evidence and rule upon the issue of whether claimant in effect refused suitable work that was made available to him pursuant to a written document.
 {¶ 60} Next, the magistrate addresses the procedural issue regarding administrative appeals. The employer argues that, because the claimant did not appeal the DHO's termination of TTD in January 2002 based on MMI, the commission lacked authority to consider and reverse that ruling.
 {¶ 61} The magistrate has found no Ohio statute or regulation that addresses this specific question. Although Ohio Adm. Code4121-3-09(C)(5) makes a general statement that consideration at all hearings shall be "confined to the issues presented in the adjudication of the claim," that language does not address the specific question of whether the commission may reverse a ruling that was not appealed. Nor has the magistrate found decisions in Ohio or other states addressing this question relating to the scope of review in an administrative appeal of a workers' compensation determination.
 {¶ 62} Philip J. Fulton argues in Ohio Workers' Compensation Law (2 Ed. 1998), Section 4.7, at 88 (citing 7 Larson, Workmen's Compensation Law Section 77A.83), that the commission cannot decide issues that were not appealed:
An abiding question is whether the Commission has jurisdiction to render a decision adverse to the appellant on any matter other than those appealed. LARSON suggests that due deference to the concept of fair play should preclude the revival of a matter previously conceded, abandoned, or resolved so a reviewing tribunal cannot sua sponte decide issues not specifically raised on appeal. * * *
(Emphasis sic.) Fulton further contends:
* * * The doctrines of res judicata and the finality of orders in administrative proceedings tend to support the proposition that the only issue that may be resolved upon appeal is that raised by the appellant. If a party cannot attack an orderwithout filing an appeal, then it may not do so simply becausethe other party appealed another part of the order. * * *
Id. at 88. (Emphasis added.)
 {¶ 63} While Mr. Fulton's rationale is persuasive, the magistrate believes that this issue presents the type of question that must be addressed and resolved in the first instance by the commission. In its order, the commission addressed only the question of whether the hearing notice adequately described the matters to be addressed in the hearing; it failed to rule on the issue of whether it had authority to hear and decide the broad issues addressed in its order, given that claimant had failed to appeal the DHO order. In failing to rule on this crucial issue presented to it, the commission abused its discretion, and a writ is warranted returning this matter to the commission to address the question.
 {¶ 64} Based on the foregoing, the magistrate concludes that a writ of mandamus is warranted that returns this matter to the commission to vacate its final order, hold a new hearing, and issue an order granting or denying the requested TTD compensation in compliance with the above-cited authorities.
 /s/ P.A. Davidson
P.A. DAVIDSON, MAGISTRATE