[THE STATE EX REL.] BAJA MARINE CORPORATION, APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Baja Marine Corp. v. Indus.
Comm.,* 114 Ohio St.3d 70, 2007-Ohio-2881.]

(No. 2006–0974—Submitted April 3, 2007—Decided June 27, 2007.)

**Per Curiam.**

{¶ 1} In this direct appeal, appellant-employer Baja Marine Corporation ("BMC") challenges the evidence underlying the appellee Industrial Commission of Ohio's award of wage-loss compensation to Cynthia S. Eggelston. Eggelston was injured at work in 1999, and a workers' compensation claim was allowed for "cervical strain/sprain; thoracic strain/sprain; lumbosacral strain/sprain; aggravation degenerative discs L–4, L–5." The Industrial Commission of Ohio awarded Eggelston temporary total disability benefits. In 2004, she moved for an additional allowance for aggravation of pre-existing disc degeneration, additional temporary total disability compensation, and wage-loss compensation.

{¶ 2} In response to these motions, reports were submitted by Dr. Sushil M. Sethi, an independent medical examiner, and Dr. Michael R. Viau, Eggelston's personal physician. Dr. Sethi examined Eggelston on May 24, 2004. He opined that Eggelston had reached maximum medical improvement. He acknowledged the presence of degenerative changes, but attributed them to the aging process and did not believe that they were aggravated by the industrial injury. Dr. Sethi concluded that overall, Eggelston's physical findings did not substantiate her subjective complaints and that any back symptoms that might exist were unrelated to her industrial injury.

{¶ 3} Dr. Viau submitted three reports on commission forms. On April 30, 2004, Dr. Viau attributed all of Eggelston's symptoms to an "[a]ggravation of pre-existing disc degeneration L–3,4 and L–2,3," a diagnosis that had nothing to do with Eggelston's workers' compensation claim. The report did not mention any of Eggelston's allowed conditions as causative or contributing factors. In a June 28, 2004 report, however, Dr. Viau attributed Eggelston's problems exclusively to "lumbosacral sprain/strain," with no mention of the degenerative condition discussed so prominently two months before.

{¶ 4} The third report from Dr. Viau, on June 18, 2004, released Eggelston to part-time light-duty work. Curiously, the June 28 report—which was generated by the same examination—said that Eggelston could do no work whatsoever.

{¶ 5} On July 12, 2004, commission hearing officers issued two orders. One specifically disallowed Eggelston's claim for "aggravation of pre-existing disc degeneration at L2, 3 [and] aggravation of pre-existing disc degeneration at L3–4." In that order, the commission relied on Dr. Sethi and concluded that "the present symptomatology is not related to the 11/22/99 injury by way of either

causation, aggravation, or flow through." The other order denied further temporary total disability compensation based on a finding of maximum medical improvement. Those orders became final.

{¶ 6} On December 20, 2004, the commission granted Eggelston's wage-loss application, based in part on Dr. Viau's June 18, 2004 report. BMC unsuccessfully objected administratively and then turned to the Court of Appeals for Franklin County.

{¶ 7} BMC objected to the commission's reliance on Dr. Viau, claiming that inconsistencies among the three Viau reports disqualified all three from evidentiary consideration. The court of appeals disagreed and denied a writ of mandamus, prompting BMC's appeal to this court as of right.

{¶ 8} Our review of the medical evidence reveals a confusing series of reports that are alternately complementary and contradictory. The commission's December 20, 2004 order suggests that the hearing officer may have been equally perplexed by the evidence, and, for this reason, we vacate the order and order the commission to consider the claim further and issue an amended order.

{¶ 9} Dr. Viau's June 18, 2004 examination generated the conclusions that Eggelston could do no work (June 28) and could do part-time work (June 18). Dr. Viau also attributed Eggelston's symptoms exclusively to nonallowed conditions on April 30 and exclusively to allowed conditions on June 28. Into this mix is added Dr. Sethi's May 24, 2004 report, which concludes that Eggelston's symptoms are unrelated to her workplace injury—a report and conclusion that the commission expressly adopted in one of its July 12, 2004 orders.

{¶ 10} The December 20, 2004 commission order currently at issue relied on Dr. Viau's report that permitted part-time work. The order does not indicate whether the hearing officer was aware that the same examination that generated the conclusion that Eggelston could work also generated the conclusion that she could not.

{¶ 11} The hearing officer also claims that the July 12, 2004 order did not state "that the 1999 injury had resolved." While the July order did not use those exact words, it did say that Eggelston's "present symptomatology is not related to the 11/22/1999 injury by way of either causation, aggravation, or flow-through." This certainly suggests that residuals from the allowed conditions no longer exist.

{¶ 12} We therefore find a sufficient lack of clarity to warrant an order to the commission to consider the claim further and issue an amended order. Accordingly, the judgment of the court of appeals is reversed.

Judgment reversed
and limited writ granted.

Moyer, C.J., Pfeifer, Lundberg Stratton, O'Connor, O'Donnell and Cupp, JJ., concur.

Lanzinger, J., concurs separately.

———

**Lanzinger, J., concurring.**

{¶ 13} In this direct appeal, appellant-employer, Baja Marine Corporation ("Baja"), seeks a writ of mandamus ordering appellee Industrial Commission of Ohio to vacate a December 20, 2004 order granting nonworking wage-loss compensation to Cynthia S. Eggelston.

Case Procedure

{¶ 14} Eggelston, employed as an inspector for Baja, lost her footing and twisted her back while stepping out of a boat on November 22, 1999. Her workers' compensation claim was initially allowed for "cervical strain/sprain; thoracic strain/sprain; lumbosacral strain/sprain." An additional condition of "aggravation of pre-existing degenerative discs L–4,–5" was recognized, and Eggelston was awarded temporary total disability benefits for her allowed conditions from the day after her injury.

{¶ 15} On April 1, 2004, Eggelston filed a motion seeking an additional allowance for aggravation of pre-existing disc degeneration at L2–3 and L3–4. Even though her personal doctor, Dr. Michael R. Viau, had given his opinion that the work injury directly and proximately caused the alleged aggravation, this opinion was not recognized. Instead, the commission relied on the May 24, 2004 medical report of Dr. Sushil M. Sethi, an independent examiner, who reviewed Eggelston's medical file and examined her. Dr. Sethi concluded that Eggelston's work injuries had resolved and that any work restrictions were due to a pre-existing degenerative disc disease. The appeal from the commission's order disallowing the aggravation was denied, and the order became final.

{¶ 16} Based on Dr. Sethi's conclusions that Eggelston had reached maximum medical improvement, Baja filed a motion to terminate temporary total disability. On June 18, 2004, while Baja's motion was pending, Dr. Viau examined Eggelston. He filled out a C–140 medical report, which stated that Eggelston was capable of working four hours per day, five days per week with specific permanent restrictions. Ten days later, Dr. Viau completed a C–84 report based upon the same June 18 physical examination, giving the contrary opinion that Eggelston could *not* return to any "light duty, alternative work, modified work, or transitional work."

{¶ 17} Dr. Sethi also submitted a June 28 supplemental report after further reviewing the medical records. He reaffirmed that Eggelston's 1999 work injury

had resolved itself and that her ongoing symptoms were caused by pre-existing degenerative disease. He concluded, "There is no causal relationship with the present symptomatology or alleged diagnoses as mentioned to the 11–22–1999 injury by way of causation, aggravation or flow through."

{¶ 18} Eggelston's wage-loss application, the subject of this appeal, was approved on December 20, 2004. Baja unsuccessfully objected administratively and was unsuccessful in its appeal to the Court of Appeals for Franklin County. The court of appeals, not agreeing with Baja that the inconsistencies within Dr. Viau's reports disqualified them from evidentiary consideration, denied a writ of mandamus, prompting Baja's appeal to this court as of right.

Legal Argument

{¶ 19} Baja strenuously argues that the commission erred in relying on Dr. Viau's opinions to award Eggelston nonworking wage loss and relies on *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 640 N.E.2d 815, and *State ex rel. M. Weingold & Co. v. Indus. Comm.*, 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69. Both cases stand for the proposition that contrary medical opinions by a physician are not evidence and cannot support an award of workers' compensation.

{¶ 20} In *Eberhardt,* we held that the commission abused its discretion in denying temporary total disability based on a physician's report that stated that the claimant had reached maximum medical improvement while also suggesting that the condition could improve with therapy. We held also that the commission abused its discretion in relying on this doctor's opinion. *Eberhardt,* 70 Ohio St.3d at 657, 640 N.E.2d 815, and at paragraph one of the syllabus.

{¶ 21} In *Weingold,* we concluded specifically that inconsistent evaluations based on the same examination could not be "some evidence" on which an award could be based. "We have held that internally inconsistent doctor's reports cannot be 'some evidence' supporting a commission decision. *State ex. rel. Lopez v. Indus. Comm.* (1994), 69 Ohio St.3d 445, 633 N.E.2d 528. By extension, substantial inconsistencies between two C84s generated by the same examination compel the same result." *Weingold,* 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69, ¶ 12.

{¶ 22} Here, the court of appeals recognized that the commission's award of nonworking wage loss rested on the opinions of Dr. Viau. *Baja,* 2006-Ohio-1646, 2006 WL 832521, ¶ 3–4, 6. Dr. Viau's single examination of Eggelston on June 18, 2004, generated contrary conclusions. The June 18 C–140 report states that Eggelston can do part-time work four hours a day, five days a week, and can stand for two hours during an eight-hour day; can occasionally bend and squat, frequently reach and lift up to ten pounds; and can occasionally lift up to 20

pounds. Yet based on the same examination, Dr. Viau later checked a box on the C–84 report that Eggelston is *not* "able to return to other employment including light duty, alternative work, modified work or transitional work."

{¶ 23} Dr. Viau also contradicted himself in attributing Eggelston's symptoms exclusively to nonallowed conditions on April 30 but exclusively to allowed conditions in his June 28 report. On the C–30 questionnaire Dr. Viau indicated that Eggelston's diagnosis was "[a]ggravation of pre-existing disc degeneration L–3,4 and L–2,3." This diagnosis did not mention any of Eggelston's allowed conditions as causing or contributing to her symptoms. However, in his June 28 report, Dr. Viau attributed Eggelston's problems exclusively to "Lumbosacral Sprain/Strain," an allowed condition, without referring to the degenerative condition he discussed on April 30.

{¶ 24} The December 20, 2004 commission order indicates that the staff hearing officer "relies on the C–140 report of Dr. Viau, dated 6/18/2004, which limits the injured worker to part-time (four to five hours per day) light duty work, on a permanent basis." The order does not mention Dr. Viau's contradictory opinion, based upon the same physical examination, that Eggelston was not able to work at all. Dr. Sethi's June 28, 2004 amended report, offered by Baja, was discounted on the grounds that it related only to the issue of the termination of temporary total disability.

{¶ 25} In summary, the commission based its order on one opinion of Eggelston's treating physician, without considering his contradictory findings made on the same examination. In *Eberhardt,* we explained:

{¶ 26} "[E]quivocal medical opinions are not evidence. * * * Such opinions are of no probative value. Further, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.

{¶ 27} "* * *

{¶ 28} "Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable." *Eberhardt,* 70 Ohio St.3d at 657, 640 N.E.2d 815.

{¶ 29} In the case at bar, Dr. Viau's opinions were contradictory on the issue of whether Eggelston was able or unable to work at light or modified duty. I concur in the reversal of the judgment of the court of appeals, but would hold that the commission abused its discretion by awarding nonworking wage-loss compensation based on insufficient evidence. I would grant the writ requested and vacate the December 20, 2004 order.

O'CONNOR, J., concurs in the foregoing opinion.

Moscarino & Treu, L.L.P., Michael J. Bertsch, Edward S. Jerse, and Kathleen E. Gee, for appellant.

Marc Dann, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee Industrial Commission.