ON OBJECTIONS TO THE MAGISTRATE'S DECISION IN MANDAMUS
{¶ 1} Relator, Certified Oil Corporation ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 2 
Commission of Ohio ("commission"), to vacate that portion of its order awarding temporary total disability ("TTD") compensation to respondent, Javine A. Artis ("claimant"), from January 21 through August 31, 2005, and to enter an amended order denying TTD compensation for that period.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and that this court should deny the requested writ. Relator filed objections to the magistrate's decision, and the commission and the claimant filed memoranda in opposition to those objections. This cause is now before the court for a full and independent review.
 {¶ 3} The basis for relator's argument that the commission abused its discretion is its contention that Dr. Lowrey's July 5, 2005 C-84 does not constitute "some evidence." In that C-84, the doctor opined that the claimant had not reached maximum medical improvement ("MMI"). But in his January 21, 2005 report and his May 27, 2005 office notes, the doctor indicated that he believed that the claimant had reached MMI. Relator maintains that, because the May office notes and the July C-84 were based upon the same physical examination and are contradictory with respect to MMI, the C-84 is equivocal and does not constitute some evidence upon which the commission may rely.
 {¶ 4} "In general, the court does not `second guess' medical opinions from medical experts and will remove a medical opinion from evidentiary consideration as having no value only when the report is patently illogical or contradictory * * *." State ex rel. Tharp v. Consol. MetalProds., Franklin App. No. 03AP-124, 2003-Ohio-6355, ¶ 67. *Page 3 
Moreover, it is well established that issues of weight and credibility of evidence lie outside the scope of mandamus inquiry. State ex rel.Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 31 OBR 70,508 N.E.2d 936. The commission, as the finder of fact, has exclusive authority to determine the persuasiveness of evidence. State ex rel.Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165, 429 N.E.2d 433;State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575,651 N.E.2d 989.
 {¶ 5} However, equivocal medical opinions are not evidence. State exrel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657,640 N.E.2d 815. "* * * [E]quivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Ambiguous statements, however, are considered equivocal only while they are unclarified. * * * Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable."
 {¶ 6} In its first objection, relator argues that the C-84 is not some evidence by virtue of the fact that it is inconsistent with Dr. Lowrey's May 2005 examination notes. For support of this proposition, it cites the case of State ex rel. Genuine Parts Co. v. Indus. Comm.,160 Ohio App.3d 99, 2005-Ohio-1447, 825 N.E.2d 1198.
 {¶ 7} In Genuine Parts, the treating physician's C-84 was not some evidence because it stated that the period of disability was caused by the allowed condition of lumbosacral sprain, but his office notes from the last examination indicated that the only condition he observed at that time was an L5-S1 disc bulge, a condition that was not allowed in the claim. Thus, the C-84 certified that the period of disability was caused by *Page 4 
one condition, while the examination revealed the cause of the disability was a wholly different and, significantly, non-allowed condition.
 {¶ 8} The magistrate acknowledged the factual similarities betweenGenuine Parts and the present case, but concluded that GenuineParts does not compel the elimination of Dr. Lowrey's C-84 from evidentiary consideration because, in denying the claimant's permanent total disability application, the commission rejected Dr. Lowrey's earlier opinion that the claimant had reached MMI.
 {¶ 9} We agree with relator's contention that Genuine Parts is applicable to this case. Just as in Genuine Parts, the C-84 conflicts with the treating physician's notes from the last examination. Contrary to the claimant's argument in her memorandum contra, it matters not that the conflicting portion of Dr. Lowrey's notes expresses an opinion as to MMI, rather than, as in Genuine Parts, the presence of certain conditions. Dr. Lowrey's C-84 is inexplicably contradictory to his office notes from the examination upon which the C-84 is based. Thus, under Genuine Parts, the C-84 is not some evidence upon which the commission may rely.
 {¶ 10} We further note that when an expert renders contradictory opinions with no explanation as to the reason and rationale for the change of opinion, then the contradictory opinions are not evidence upon which the commission may rely. See, e.g., State ex rel. M. Weingold Co. v. Indus. Comm., 97 Ohio St.3d 44, 2002-Ohio-5353, 776 N.E.2d 69
(C-84 not "some evidence" when it premised the period of disability upon conditions affecting the lumbar and thoracic areas of the spine, when an earlier C-84 from the same examination cited only conditions affecting the cervical spine as contributing to the period of disability);State ex rel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445, *Page 5 
449, 633 N.E.2d 528 ("normal" physical findings in office notes contradicted physician's assessment of a "high degree" of impairment);State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72,5 OBR 127, 448 N.E.2d 1372 (physician alternately opined that the claimant could work and could not work); State ex rel. Columbia-Csa/Hs GreaterCanton Area Sys. v. Indus. Comm., Franklin App. No. 02AP-703, 2003-Ohio-2189 (physician stated that the physical examination was unreliable due to multiple symptom magnification behaviors, and also opined that, based upon that same examination, the claimant could not return to work); Stanforth v. Washington Distrib. (1983), Franklin App. No. 82AP-932 (C-84 contradicted two earlier reports in which the same physician opined that the claimant was not totally disabled and could return to work within the relevant time frame); State ex rel. GoodyearTire Rubber Co. v. Maccioli, Franklin App. No. 02AP-61, 2002-Ohio-4497 (physician's report stating claimant was incapable of sustained remunerative employment contradicted report given 14 days earlier in which the same physician assessed only a 25 percent permanent partial impairment).
 {¶ 11} Though this court has at least once determined that a physician sufficiently explained his change in opinion on a critical issue,[1]
the record in this case contains no such explanation from Dr. Lowrey.
 {¶ 12} For the foregoing reasons, relator's first objection is sustained.
 {¶ 13} In its second objection, relator argues that the magistrate erred in relying upon the case of State ex rel. Kinnear Div., HarscoCorp. v. Indus. Comm. (1997), 77 Ohio St.3d 258, 673 N.E.2d 1290. The claimant responds by pointing out that the *Page 6 
magistrate characterized Kinnear as merely "instructive."[2]
Nonetheless, relator argues that the equivocation accepted inKinnear was borne out of procedural necessity and was limited to circumstances arising under the "Eaton docket" developed in response to the case of State ex rel. Eaton Corp. v. Lancaster (1988),40 Ohio St.3d 404, 534 N.E.2d 46.
 {¶ 14} We agree. Kinnear does not support the magistrate's proposition that "[practical considerations can be dispositive in determining whether a facial conflict in the medical evidence submitted by a physician should be viewed as fatal to its evidentiary viability."[3]
That case is confined to situations arising under the Eaton docket and is inapplicable to the present case. Thus, whether the magistrate relied on Kinnear as "instructive" or dispositive, the magistrate's consideration of that case was error. The second objection is sustained.
 {¶ 15} In its third and final objection, relator argues that the magistrate's conclusion that "the facial conflict between Dr. Lowrey's July 5, 2005 C-84 and his prior statements on MMI * * * [is] readily explainable by reference to the intervening commission proceedings" improperly allows physicians to base medical opinions on commission proceedings. We agree. As the claimant states in her memorandum contra, commission proceedings, and the commission's legal determinations about MMI, do not inform physician's opinions; rather, physician opinions inform commission decisions.
 {¶ 16} Though we do not engage in speculation as to whether commission proceedings played any role in Dr. Lowrey's change of opinion, we conclude that it was error for the magistrate to explain that change by reference to the commission's *Page 7 
determinations. What was required-and never provided-was an explanation from Dr. Lowrey. The magistrate erred in using the commission's June 2005 denial of permanent total disability compensation to explain the basis for the abrupt change of opinion expressed in Dr. Lowrey's C-84. For this reason, the third objection is sustained.
 {¶ 17} We note that in the recent case of State ex rel. Baja MarineCorp. v. Indus. Comm., 114 Ohio St.3d 70, 2007-Ohio-2881, the Supreme Court of Ohio granted a limited writ and ordered the commission to issue an amended order resolving claimed inconsistencies among three reports from the claimant's treating physician. We note that no party has requested or suggested that such an alternative writ be granted in the present case, and, in our view, the facts do not warrant such an action. In Baja Marine, the record contained "a confusing series of reports that are alternately complementary and contradictory" and the commission's order "suggested] that the hearing officer may have been equally perplexed by the evidence." Id. at ¶ 8. Thus, the Supreme Court found "a sufficient lack of clarity" to warrant an order that the commission reexamine the evidence and issue an amended order. In the instant case, however, Dr. Lowrey's notes and C-84 very clearly set forth his opinions regarding MMI. Likewise, the SHO's order belies no confusion, equivocation or ambivalence.
 {¶ 18} For all of the foregoing reasons, this court finds that Dr. Lowrey's July 5, 2005 C-84 is not some evidence supporting the commission's order and the commission abused its discretion in relying thereon. Relator's first, second and third objections are sustained.
 {¶ 19} Having undertaken a review of relator's objections, considered the arguments of the parties, and independently appraised the record, we adopt the findings *Page 8 
of fact contained in the magistrate's decision, we reject the conclusions of law contained therein, and we modify the magistrate's decision to reflect the conclusions of law expressed hereinabove. The requested writ of mandamus is granted.
Objections sustained; writ of mandamus granted.
 KLATT and FRENCH, JJ., concur. *Page 9 
 APPENDIX A IN MANDAMUS *Page 10 {¶ 20} In this original action, relator, Certified Oil Corporation, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate that portion of its order awarding temporary total disability ("TTD") compensation from January 21 through August 31, 2005, and to enter an amended order denying TTD compensation for that period.
Findings of Fact: {¶ 21} 1. On February 16, 2003, respondent Javine A. Artis ("claimant") sustained an industrial injury while employed with relator, a state-fund employer. The industrial claim (03-318180) is allowed for "contusion of hip, right; pelvic fracture, left; aggravation of degenerative joint disease, lumbar; fracture acetabulum closed, right; fracture of pubis closed, right; fracture of pubis closed, left; sprain lumbar region."
 {¶ 22} 2. On January 21, 2005, claimant's attending physician, orthopedic surgeon Charles E. Lowrey, M.D., wrote:
 * * * I have been treating her since 25 February, 2003. She has united her fractures, but has persistent chronic pain problems. I have referred her to Dr. Orzo for chronic pain and management. She is presently taking Celebrex, Elavil, and Tramadol. She is also trialing Lidoderm patches for pain management. At this time I believe her condition is maximally medically improved. We do not plan any aggressive treatment including surgical treatment. However, in my opinion[,] Mrs. Artis is permanently and totally disabled from gainful employment as the result of her allowed conditions. Additionally, she will require chronic pain treatment for an indefinite time frame.
 {¶ 23} 3. On February 1, 2005, at the request of the Ohio Bureau of Workers' Compensation ("bureau") claimant was examined by Edwin H. Season, M.D. Dr. Season wrote: *Page 11 
 * * * Ms. Artis has had extensive conservative treatment for chronic lower back pain. She has not been considered a candidate for surgery. She has not undergone an appropriate rehabilitation/work hardening program.
 I would recommend a rehabilitation/work hardening program. She will not reach MMI until she completes such a program.
 {¶ 24} 4. On February 3, 2005, claimant filed an application for permanent total disability ("PTD") compensation. In support, claimant submitted the January 21, 2005 report of Dr. Lowrey.
 {¶ 25} 5. On May 27, 2005, claimant was examined by Dr. Lowrey at his office. Following the office visit, Dr. Lowrey wrote: "I have told her I believe she is MMI and therefore I am not recommending temporary total disability at this time."
 {¶ 26} 6. Following a June 22, 2005 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order of June 22, 2005 explains:
 * * * [T]he Application filed 02/03/2005, for Permanent and Total Disability Compensation, is denied for the reason that it was filed prematurely. This decision is based upon the following findings.
 While working as an assistant manager for Certified Oil, the claimant slipped on some snow and injured her right hip on 02/16/2003. Later that year, in September 2003, she began working part time as a short order cook. That job ended on 06/24/2004, when her employer lost the contract with the facility in which she worked. The claimant testified that because of her increasing pain, she has not been able to return to work since then.
 The claimant has been accepted into a rehabilitation plan. Her attorney stated at hearing that he recently talked with the rehabilitation case manager, who revealed that the claimant is still considered to be a viable candidate for their *Page 12 
program, but that it has been temporarily suspended, pending the outcome of this hearing.
 The claimant testified at hearing that she is scheduled to undergo another epidural steroid injection by Dr. Orzo, her treating pain management specialist, later today. She related that a possibility exists that her chronic pain could be alleviated to some degree for about eleven months.
 Dr. Season examined the claimant on 02/01/2005 on behalf of the BWC. He concluded that the claimant's conditions have not reached maximum medical improvement, that she should enter a "rehabilitation/work hardening program," and that her functional capacity would probably improve under such circumstances.
 In light of the claimant's current (although temporarily suspended) involvement with the rehabilitation division, the possibility that the injection that she had today may significantly improve her physical condition, and Dr. Season's recommendations, it is concluded that the claimant's IC-2 Application was filed pre-maturely.
 Accordingly, the claimant's Application for Permanent and Total Disability Compensation is denied for the reasons that the claimant's conditions are not "permanent," and that she has not fully explored her potential for re-employment.
 {¶ 27} 7. On a C-84 dated July 5, 2005, Dr. Lowrey certified TTD from the date of injury to an estimated return-to-work date of September 1, 2005. The C-84 form asks the attending physician whether the industrial injury has reached maximum medical improvement ("MMI"). Dr. Lowrey responded to the query in the negative. Dr. Lowrey did not extend his TTD certification beyond August 31, 2005.
 {¶ 28} 8. On August 18, 2005, claimant moved for TTD compensation.
 {¶ 29} 9. On September 23, 2005, at relator's request, claimant was examined by orthopedic surgeon Pietro Seni, M.D. Dr. Seni wrote: *Page 13 
 * * * [I]t is my opinion the claimant has reached maximum medical improvement for all the allowed conditions of this claim but the lumbar spondylosis. That condition without any further surgical intervention, I believe she is maximum medical improvement for that condition as well.
 {¶ 30} 10. Following a November 10, 2005 hearing, a district hearing officer ("DHO") issued an order stating:
 It is the additional order of the District Hearing Officer that temporary total disability compensation from 12/01/2004 through 01/20/2005 is granted. The District Hearing Officer finds that the injured worker was unable to return to former position of employment due to the allowances in this claim during this period of time. In making this decision the District Hearing Officer relies upon Dr. Lowrey's contemporaneous office records as well as his 07/05/2005 C-84 report.
 * * * [T]emporary total disability compensation from 01/21/2005 through 11/10/2005 is denied. The District Hearing Officer finds that the injured worker attained maximum medical improvement for the currently allowed conditions as of 01/21/2005. Moreover, the District Hearing Officer finds that there is no medical proof on file that the injured worker's condition again became temporarily and totally disabling on any date after 01/21/2005. In making this decision, the District Hearing Officer relies upon Dr. Lowrey's 01/21/2005 and 05/27/2005 office records as well as Dr. Seni's 09/23/2005 independent medical examination report.
 {¶ 31} 11. Claimant administratively appealed the DHO's order of November 10, 2005.
 {¶ 32} 12. Following a December 23, 2005 hearing, an SHO issued an order stating that the DHO's order is "modified." The SHO's order of December 23, 2005 explains:
 In that the office notes of Dr. Lowery [sic] conflict with his 7/05/2005 C-84's certification of temporary total disability (and opinion that claimant had not reached maximum medical improvement), the Staff Hearing Office[r] find[s] that *Page 14 
the proper date for the termination of temporary total disability upon the grounds of maximum medical improvement (as stated by Dr. Seni's report of 3/23/2005) would be the date of resolution of such discrepancy (i.e. the date of hearing herein).
 However, there existing no evidence that the claimant was temporary total disability [sic] beyond 8/31/2005 as stated on Dr. Lowery's [sic] C-84 of 7/05/20[0]5 temporary total disability is ordered terminated as of 9/01/2005 instead of 1/20/2005.
(Emphasis sic.)
 {¶ 33} 13. On February 14, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of December 23, 2005.
 {¶ 34} 14. On August 18, 2006, relator, Certified Oil Corporation, filed this mandamus action.
Conclusions of Law: {¶ 35} The issue is whether Dr. Lowrey's July 5, 2005 C-84 is some evidence supporting the award of TTD compensation from January 21 through August 31, 2005.
 {¶ 36} Finding that Dr. Lowrey's July 5, 2005 C-84 is some evidence supporting the TTD award from January 21 through August 31, 2005, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 37} The Supreme Court of Ohio has held that a medical report can be so internally inconsistent that it cannot constitute some evidence supporting a commission decision. State ex rel. Lopez v. Indus.Comm. (1994), 69 Ohio St.3d 445. By extension, the court held inState ex rel. M. Weingold Co. v. Indus. Comm., *Page 15 97 Ohio St.3d 44, 2002-Ohio-5353, that substantial inconsistencies between two C-84s generated by the same examination compel the same result as in Lopez.
 {¶ 38} This court followed the M. Weingold rationale in State ex rel.Genuine Parts Co. v. Indus. Comm., 160 Ohio App.3d 99, 2005-Ohio-1447, at ¶ 4, wherein this court stated:
 Contrary to the respondent's contention, Dr. Snell's C-84 is not evidence upon which the commission could rely because the C-84 is inconsistent with Dr. Snell's examination notes. Recognizing this inconsistency does not require the weighing of evidence as respondent argues. We give no greater weight to either the C-84 or the examination notes. We simply find, as did the magistrate, that they relate to the same examination and that they are inconsistent. The fact that the inconsistency arises from statements contained in two different documents rather than in one report is not significant. Again, it is clear that both documents were prepared by Dr. Snell and relate to the same physical examinations. As the magistrate notes, the same rationale was applied in State ex rel. M. Weingold Co. v. Indus. Comm., 97 Ohio St.3d 44, 2002-Ohio-5353 * * *, which involved substantial inconsistencies between two C-84s arising from the same examination.
 {¶ 39} In Genuine Parts, Dr. Snell certified the allowed lumbosacral sprain as the cause of TTD when his office notes failed to mention a lumbosacral sprain but did discuss serious disallowed and nonallowed conditions.
 {¶ 40} Citing Genuine Parts, relator contends that Dr. Lowrey's July 5, 2005 C-84 must be removed from evidentiary consideration because the C-84's certification that disability is temporary is in conflict with Dr. Lowrey's January 21, 2005 statement that claimant's "condition is maximally medically improved," and his May 27, 2005 statement: "I have told her I believe she is MM I and therefore I am not recommending temporary total disability at this time." *Page 16 
 {¶ 41} The magistrate disagrees with relator's contention that theGenuine Parts rationale compels the commission to eliminate Dr. Lowrey's July 5, 2005 C-84 from evidentiary consideration.
 {¶ 42} Significantly, following the June 22, 2005 hearing, the commission, through its SHO, held that the industrial injury had not reached MMI and, on that basis, denied the PTD application. Implicitly, the commission not only rejected Dr. Lowrey's opinion that claimant is PTD, it also rejected Dr. Lowrey's opinion that the industrial injury had reached MMI.
 {¶ 43} The real issue here is whether Dr. Lowrey should be permitted to render another disability opinion based upon his acceptance of the commission's implicit rejection of his opinion that the industrial injury is at MMI. This type of issue was not present in GenuineParts and, thus, renders that case distinguishable from this one.
 {¶ 44} As a practical matter, to hold that an attending physician cannot render another disability opinion based upon his acceptance of the commission's determination that the injury is not at MMI, would prevent the attending physician from certifying TTD following a commission denial of a PTD application based upon a finding that the injury is not at MMI. In effect, the claimant would be compelled to change his attending physician in order to avoid the conflict on MMI.
 {¶ 45} Ohio Adm. Code 4121-3-34(D) sets forth commission guidelines for the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(D)(1)(f) provides:
 If, after hearing, the adjudicator finds that the injured worker's allowed medical condition(s) is temporary and has not reached maximum medical improvement, the injured worker shall be found not to be permanently and totally disabled because the condition remains temporary. In claims *Page 17 
involving state fund employers, the claim shall be referred to the administrator to consider the issuance of an order on the question of entitlement to temporary total disability compensation. In claims involving self-insured employers, the self-insured employer shall be notified to consider the question of the injured worker's entitlement to temporary total disability compensation.
 {¶ 46} The above commission rule specifically provides for the consideration of entitlement to TTD compensation following commission denial of a PTD application based upon a finding that the injury is not at MMI. That rule is applicable to the instant scenario involving the commission's denial of the instant claimant's PTD application on MMI grounds.
 {¶ 47} Obviously, under the rule, following denial of a PTD application on MMI grounds, the administrator cannot issue an order awarding TTD compensation in the absence of medical evidence from the attending physician that the claimant is TTD. Thus, the rule seems to contemplate that somehow evidence of TTD from the attending physician will be forthcoming so that TTD compensation can be considered.
 {¶ 48} In the magistrate's view, Genuine Parts does not place the burden on a claimant to obtain a change of physician just to avoid the appearance of a conflict that relator argues for here.
 {¶ 49} In State ex rel. Kinnear Div., Harsco Corp. v. Indus.Comm. (1997), 77 Ohio St.3d 258, the claimant's self-insured employer paid TTD compensation based upon C-84s from Dr. Guluzian. Thereafter, the claimant applied for PTD compensation. In support, Dr. Guluzian certified that the claimant "`is now permanently and totally disabled from all gainful employment.'" Id. at 259. However, because the claimant's PTD application was placed on the so-called "Eaton docket," Dr. Guluzian continued to *Page 18 
submit C-84s certifying TTD, and the self-insured employer continued to pay TTD compensation pending a hearing on the PTD application.
 {¶ 50} The Kin near court states:
 The second flaw in Harsco's argument is that Dr. Guluzian's simultaneous PTD and TTD opinions are not an example of "equivocation," but of procedural necessity, engendered by compliance with the "Eaton docket" procedures. Those procedures necessarily contemplate the filing of C-84s by the attending physician in order to continue TTD compensation pending hearing on the PTD application. The purpose of this procedure, which this court has endorsed, is to enable eligible claimants to begin to receive PTD compensation immediately upon termination of TTD compensation. See State ex rel. Blake v. Indus. Comm. (1992), 65 Ohio St.3d 453, 455 * * *; State ex rel. Ford Motor Co. v. Indus. Comm.
(1992), 65 Ohio St.3d 17, 21-22 * * *; State ex rel. Eaton Corp. v. Lancaster (1988), 40 Ohio St.3d 404[.] * * * Thus, we decline to find any equivocation in Dr. Guluzian's reports, and instead find his October 2, 1991 report to be some medical evidence of PTD upon which the commission properly relied.
Id. at 265-266.
 {¶ 51} While Kinnear is not precisely on all fours with the instant case, the magistrate, nevertheless, finds it to be instructive. Practical considerations can be dispositive in determining whether a facial conflict in the medical evidence submitted by a physician should be viewed as fatal to its evidentiary viability.
 {¶ 52} Here, the facial conflict between Dr. Lowrey's July 5, 2005 C-84 and his prior statements on MM I are readily explainable by reference to the intervening commission proceedings. By way of contrast, in Genuine Parts, there was no acceptable explanation for Dr. Snell's failure to mention the lumbosacral sprain in his *Page 19 
office notes when he had certified the lumbosacral sprain as the proximate cause of disability.
 {¶ 53} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] See, e.g., State ex rel. Tharp v. Consol. Metal Prods., Franklin App. No. 03AP-124, 2003-Ohio-6355.
[2] Magistrate's Decision, infra, at ¶ 51.
[3] Magistrate's Decision, infra, at ¶ 51. *Page 1