[Cite as *State ex rel. Logan Clay Prods. Co. v. Indu. Comm.*, 2015-Ohio-5235.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Logan Clay Products Co., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | | No. 14AP-808 |
| | : | |
| Industrial Commission of Ohio and Vernon Hettinger, | | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 15, 2015

*Vorys, Sater, Seymour and Pease LLP, Bradley K. Sinnott* and *Rosemary D. Welsh,* for relator.

*Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Larrimer and Larrimer,* and *Thomas L. Reitz,* for respondent Vernon Hettinger.

ON OBJECTIONS TO THE MAGISTRATE'S DECISION

HORTON, J.

{¶ 1} Relator, Logan Clay Products Co., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting permanent and total disability ("PTD") compensation to respondent/claimant, Vernon Hettinger.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that the

report of Dr. James J. Sardo, M.D., upon which the commission exclusively relied, provided some evidence to support the commission's determination that the allowed conditions of the industrial claim prohibited all sustained remunerative employment. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed the following objections to the magistrate's decision:

[I.] The Magistrate's Decision approves an award of permanent compensation solely on the basis of an equivocal medical report that makes no finding of particular physical limitations but offers a conclusion of complete medical incapacity to work.

[II.] The basis for the Magistrate's Decision is a misstatement of fact, supported by no authority.

[III.] Even if the recorded subjective history constituted the examining physician's own findings, the Sardo report still does not describe physical limitations consistent with a conclusion of complete medical incapacity to work.

{¶ 4} Relator's first and third objections contain, in essence, the same arguments made to and addressed by the magistrate, namely, that Dr. Sardo's report did not support a conclusion that Mr. Hettinger is incapable of sustained remunerative employment. Specifically, relator contends that the Sardo report does not specify Mr. Hettinger's physical limitations, and the very limited findings in the report are insufficient to support the conclusion that he is incapable of work. Relator asks us to compare the description of physical limitations to the conclusion at the end of the report to see if there is consistency between the findings and the conclusion.

{¶ 5} Our independent reading of the report shows that Dr. Sardo did find physical limitations. The report supports the ultimate conclusion that Mr. Hettinger is unable to work. Dr. Sardo's report is not internally inconsistent, nor is it equivocal. As the magistrate indicated, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. *State ex rel. Eberhardt v. Flexible Corp.*, 70 Ohio St.3d 649, 657 (1994).

{¶ 6} Here, Dr. Sardo discussed the relevant medical history, the injury, and the treatment rendered. Dr. Sardo summarized Mr. Hettinger's current symptoms, and what Dr. Sardo observed after conducting his own physical examination. The objective findings from the physical examination are consistent with Mr. Hettinger's subjective complaints and current symptoms. Mr. Hettinger reported that he is able to walk for approximately 10 minutes, to sit for 10-15 minutes, and to stand for less than 10 minutes. Mr. Hettinger described his pain and that walking, bending, and twisting aggravate his symptoms. Dr. Sardo goes on to discuss the impact of the symptoms on Mr. Hettinger's activities, including the statement that he has significant physical limitations including back and bilateral lower extremity pain, decreased walking, sitting, and standing tolerance.

{¶ 7} Dr. Sardo's report is not internally inconsistent, nor is it contradictory, ambivalent, vague, or confusing. There is no indication that Dr. Sardo found Mr. Hettinger to be exaggerating, misleading, or otherwise not credible, and therefore it was not inconsistent or equivocal for Dr. Sardo to rely on Mr. Hettinger's statements in assessing his current level of impairment.

{¶ 8} In the second objection, relator contends the magistrate erred when he inferred that Dr. Sardo assessed Mr. Hettinger's reported symptoms and limitations and found them to be credible. As noted above, the subjective complaints and current symptoms as reported by Mr. Hettinger are consistent with Dr. Sardo's findings from the physical examination. It was not error for the magistrate to infer that Dr. Sardo found the claimant to be credible, particularly when Dr. Sardo incorporated some of those complaints and symptoms into the discussion section of his report.

{¶ 9} Following review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we overrule the objections to the magistrate's decision and adopt the magistrate's decision as our own. The requested writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

**TYACK and LUPER SCHUSTER, JJ., concur.**

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. | : | |
| Logan Clay Products Co., | | |
| | : | |
| Relator, | | |
| | : | |
| v. | | No. 14AP-808 |
| | : | |
| Industrial Commission of Ohio and | | (REGULAR CALENDAR) |
| Vernon Hettinger, | : | |
| | | |
| Respondents. | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on May 12, 2015

---

*Vorys, Sater, Seymour and Pease LLP, Bradley K. Sinnott* and *Rosemary D. Welsh,* for relator.

*Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Larrimer and Larrimer,* and *Thomas L. Reitz,* for respondent Vernon Hettinger.

---

### IN MANDAMUS

{¶ 10} In this original action, relator, Logan Clay Products Co. ("Logan Clay" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Vernon Hettinger, to eliminate the reports of James J.

Sardo, M.D., from further evidentiary consideration, and to re-adjudicate the PTD application absent reliance upon Dr. Sardo's reports.

Findings of Fact:

{¶ 11} 1. On February 2, 2001, Vernon Hettinger ("claimant") injured his lower back while employed as a laborer for Logan Clay. The injury occurred when his feet slipped on ice.

{¶ 12} 2. The industrial claim (No. 01-806287) is allowed for: "low back strain; herniate disc L5-S1; post laminectomy syndrome."

{¶ 13} 3. On October 4, 2006, claimant underwent low back surgery performed by James Uselman, M.D. In his operative report, Dr. Uselman describes the surgical procedure as "[l]eft L5-S1 microscopic lumbar laminectomy and diskectomy."

{¶ 14} 4. On December 6, 2011, claimant underwent a surgical procedure performed by Brian F. Seaman, D.O. In his operative report, Dr. Seaman wrote:

> PREOPERATIVE DIAGNOSIS
> Intractable back pain and left lower extremity neuralgia with successful spinal cord stimulator trial.
>
> * * *
>
> PROCEDURE PERFORMED
> 1. Laminectomy of T10 in addition to T11 bilateral.
> 2. Insertion of epidural paddle spinal cord stimulator to the level of T8.
> 3. Electronic programming and interrogation of battery analysis.
> 4. Subcutaneous implantation of pulse stimulator.

5. On December 26, 2012, attending physician Stephen Altic, D.O., wrote:

> Mr. Hettinger is a patient of mine and has been under my care since 01/20/2009. I have seen him specifically and solely because of an industrial accident which occurred 02/02/2001 which resulted in a herniated L5-S1 disc with resultant surgery and the development of post laminectomy syndrome.
>
> * * *
>
> I referred Mr. Hettinger to Dr. Perkins who is a pain management PM&R specialist. Dr. Perkins discussed with

Mr. Hettinger a spinal cord stimulator trial. The patient had good success with the trial. It did relieve quite a bit of radicular complaints. This gentleman continues to use a spinal cord stimulator for which he received a permanent implant.

I have been seeing Mr. Hettinger on a fairly regular basis, every 2-3 months, at least since I began seeing him. His last evaluation was 12/04/2012. At that time, his lumbar axial pain was getting quite a bit worse with some worsening of his left leg pain. This is now despite the use of the spinal cord stimulator. He is beginning to develop some right lower extremity radicular complaints as well.

On objective examination, throughout his many visits, he has impaired function of his lumbar spine with neurologic deficits. On my most recent examination, Mr. Hettinger displayed painful range of motion in the lumbar spine with flexion at 25-30 degrees and extension at 0-10 degrees. Straight leg raising was positive bilateral at 35-40 degrees and there was diminished two-point discrimination in the left lower extremity. Diminished strength was noted in both lower extremities. Deep tendon reflexes were +1/4.

* * *

This gentleman has been involved in heavy labor work all of his life and only has a high school degree. Given his MRI findings and his progressive clinical problems as I described them, there is little likelihood that this gentleman's condition will improve and, in fact, it is more likely that it will worsen. Therefore, given his sedentary to less than sedentary activity level and his vocational history, I believe it is unreasonable that Mr. Hettinger would be able to sustain gainful remunerative employment. He has a poor prognosis and his overall clinical condition is liable to worsen. For this reason, I believe that he is permanently and totally disabled from all gainful remunerative employment.

{¶ 15} 6. On July 11, 2013, claimant filed an application for PTD compensation. In support, claimant submitted the December 26, 2012 report of Dr. Altic.

{¶ 16} 7. On August 22, 2013, at relator's request, claimant was examined by Gerald S. Steiman, M.D. In his six-page narrative report dated August 27, 2013, Dr. Steiman opined:

Mr. Hettinger's history, medical record review, and physical exam provide no evidence which would indicate he is unable to perform sustained remunerative employment as a result of the allowed conditions within claim 01-806287. Clearly, Mr. Hettinger does have an impairment secondary to the allowed conditions but the impairment is not work prohibitive.

The allowed conditions do not preclude Mr. Hettinger from entering physical or vocational rehabilitation. The physical and vocational rehabilitation are not necessary to promote his return to some form of sustained remunerative employment but would increase the types of sustained remunerative employment which are available to him.

Mr. Hettinger is no longer able to return to his prior job activities.

{¶ 17} 8. On October 4, 2013, at the commission's request, claimant was examined by Dr. Sardo. In his three-page narrative report, Dr. Sardo states:

HISTORY OF THE PRESENT CONDITION: The injured worker was previously employed at Logan Clay Products as the lead man in the grinding room when he slipped on ice and injured his back. Treatment included physical therapy at Hocking Valley Rehabilitation. He states the therapy made his pain worse. He is able to return to work approximately 8 months later. He also received treatment with Dr. Woo and he underwent spinal injections which did not help. On 10/04/2006 he underwent a left L5-S1 microdiscectomy and laminectomy by Dr. Uselman. He states the surgery helped for about 6 months. He was able to return to work. He reports that while picking up flue rings he felt a snap in his back. He followed up with Dr. Woo and underwent physical therapy and was prescribed pain medication. He required placement of a spinal cord stimulator on December 6, 2011 by Dr. Seaman at Riverside Hospital. He states the stimulator has helped significantly with his pain. He is currently following up with Dr. Altic. He sees him only as needed. He is currently on social security disability for his back. He states there is no further treatment plan.

CURRENT SYMPTOMS: The pain is localized to the lower back with radiation to the left leg and foot. He also has radiation to the right with pain down to his right knee. He describes a sharp, stabbing sensation in his lower back. He

describes the leg pain as a hot "knife slicing" sensation. He also has burning and numbness in his legs. His pain is worse with any movement. Walking, bending, and twisting aggravate his symptoms. He obtains some relief if he uses a hot shower. He is currently not taking any pain medication and primarily uses Tylenol.

IMPACT ON ACTIVITIES: He reports being able to walk for approximately 10 minutes. He is able to sit for 10-15 minutes. He is only able to stand for less than 10 minutes. He tries to avoid housework and yard work because of pain. He states it takes time for his self-care activities including dressing and bathing. He is unable to hunt. He states he sleeps about 3 hours per night. He drives only as necessary. His difficult daily activities involve primarily watching TV at home. He will let the dog go out to run.

* * *

PAST SURGICAL HISTORY: Mastoid tumor removed from the right ear in 1998. Right hand surgery. Spinal cord stimulator placement. Lumbar surgery.

* * *

REVIEW OF MEDICAL RECORDS: I reviewed all of the medical records provided to me by the Industrial Commission.

PHYSICAL EXAMINATION: Height: 5'5", Weight: 135 pounds. He was able to step up to the examination table without any difficulty. He was ambulating without an assistive device without any difficulty. He has a well-healed scar in the midline of the lumbar spine. He is tender in the lumbar paraspinals. Motor strength is 5/5 in both lower limbs. Sensation was decreased to pinprick in the left lower leg. Reflexes were 2 + at both knees, 2 + at the right ankle, absent at the left ankle. No swelling in the extremities. Seated straight leg raising was negative bilaterally. Lumbar flexion 30 degrees, zero degree of extension.

DISCUSSION: The injured worker continues to experience back and bilateral lower extremity pain despite previous left L5-S1 microlaminectomy and microdiscectomy. His pain is fairly well-controlled with a spinal cord stimulator and Tylenol. He does have restriction of his lumbar range of

motion and an absent left Achilles reflex on physical examination. Previous EMG from December 9, 2010 revealed a chronic left S1 radiculopathy. He does have significant physical limitations including decreased walking, sitting, and standing tolerance. He has difficulty with most of his household activities. At the current time, it is my medical opinion that he has reached maximal medical improvement for the allowed conditions in this claim. He has undergone appropriate, conservative, and surgical treatment.
OPINION:

* * *

In my medical opinion, the injured worker has reached maximal medical improvement with regards to the allowed conditions in this claim. He failed an initial trial of conservative treatment including physical therapy and injections. He subsequently underwent lumbar micro-discectomy and microlaminectomy. His symptoms persisted requiring placement of a spinal cord stimulator. At this point, I would not expect any fundamental functional, or physiologic change with any further medical treatment.

* * *

It is my opinion that the combined whole person impairment for the allowed conditions in this claim is: 13%.

{¶ 18} 9. On October 4, 2013, Dr. Sardo completed a form captioned "Physical Strength Rating." On the form, Dr. Sardo indicated by his mark that "[t]his Injured Worker is incapable of work."

{¶ 19} 10. Following a June 24, 2014 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation starting October 14, 2013, the date of Dr. Sardo's report. The order explains:

Permanent and total disability compensation is awarded from 10/04/2013 for the reason that the medical report from Dr. Sardo, dated 10/04/2013, upon which the Staff Hearing Officer relies to find permanent total disability, supports permanent total disability as of said date.

* * *

Based upon the report of Dr. Sardo, dated 10/04/2013, it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed condition. Therefore, pursuant to <u>State ex rel. Speelman v. Indus. Comm.</u> (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors.

{¶ 20} 11. On August 20, 2014, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 21} 12. On October 13, 2014, relator, Logan Clay Products Co., filed this mandamus action.

Conclusions of Law:

{¶ 22} The issue is whether the reports of Dr. Sardo, upon which the commission exclusively relied, provide the some evidence to support the commission's determination that the allowed conditions of the industrial claim prohibit all sustained remunerative employment.

{¶ 23} Declaring that Dr. Sardo's narrative report describes "only minor physical restriction" or "very modest findings of physical abnormality," relator concludes that the narrative report is inconsistent with Dr. Sardo's mark on the Physical Strength Rating indicating claimant "is incapable of work." (Relator's brief, 8-9.)

{¶ 24} As more fully explained below, the magistrate finds that the reports of Dr. Sardo provide the some evidence to support the commission's determination that the industrial injury alone prohibits all sustained remunerative employment.

{¶ 25} *State ex rel. Frigidaire, Inc. v. Indus. Comm.*, 70 Ohio St.3d 166 (1994) is an early case adjudicating the question of whether a doctor's report contains sufficient findings to support the doctor's conclusion that all sustained remunerative employment is prohibited.

{¶ 26} In *Frigidaire,* the commission's PTD award was premised upon a report from Dr. Elizabeth Reed, stating in its entirety:

The above patient is totally & permanently disabled, due to back injury (Trauma aggravating arthritic changes in lumbar & thoracic spine). He is able to walk short distances but is unable to do any lifting or work.

> "He is using some hydrotherapy and taking Motrin at the present time."
>
> "He also shows considerable depression & nervousness for which he takes Elavil. This may be related to the head injury & laceration."

*Id.* at 166-67.

{¶ 27} Upholding the commission's reliance upon Dr. Reed's report, the court explains:

> Frigidaire also alleges a lack of supportive findings in the report. We again disagree. Although skimpy, the report pinpoints the claimant's arthritic condition as the source of his problems. It also indicates that claimant cannot do lifting and is restricted to brief walking, both of which would impact on his ability to work. Given the commission's authority to evaluate evidentiary weight and credibility, its decision to rely on Reed's report is not an abuse of discretion.

*Id.* at 168.

{¶ 28} In *State ex rel. O'Brien v. Cincinnati Inc.*, 10th Dist. No. 07AP-825, 2008-Ohio-2841, this court had occasion to succinctly summarize two prior cases from this court in which this court articulated the rule to be applied in reviewing doctor's reports upon which the commission has relied. The *O'Brien* court states:

> [T]he commission cannot simply rely on a physician's "bottom line" identification of an exertional category without examining the specific restrictions imposed by the physician in the body of the report. See *State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm.,* Franklin App. No. 03AP-684, 2004-Ohio-3841; and *State ex rel. Howard v. Millennium Inorganic Chemicals,* Franklin App. No. 03AP637, 2004-Ohio-6603. In both Owens-Corning and Howard, the doctor indicated that the injured worker could perform at a certain strength level, and yet, the rest of the report indicated greater restrictions on the injured worker that would actually render him incapable of performing the strength level work that the doctor had indicated he could perform. This court held in Owens-Corning and Howard that the commission cannot simply rely upon a determination that an injured worker can perform at a certain strength

> level; rather, the commission must review the doctor's report and actually make certain that any physical restrictions the doctor listed correspond with an ability to actually perform at the exertional level indicated by the doctor.

*Id.* at ¶ 10.

{¶ 29} Consistent with *O'Brien* is the rule that equivocal medical opinions are not evidence. *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994). Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. *Id.*

{¶ 30} Moreover, it has been repeatedly held that a physician's report can be so internally inconsistent that it cannot be some evidence supporting the commission's decision. *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. Taylor v. Indus. Comm.*, 71 Ohio St.3d 582 (1995).

{¶ 31} However, in mandamus, courts will not second guess the medical expertise of the doctor whose report is under review. *State ex rel. Young v. Indus. Comm.,* 79 Ohio St.3d 484 (1997).

{¶ 32} The evaluation of the weight and credibility of the evidence before it rests exclusively with the commission. *State ex rel. Thomas v. Indus. Comm.,* 42 Ohio St.3d 31, 33 (1989), citing *State ex rel. Burley v. Coil Packing, Inc.,* 31 Ohio St.3d 18 (1987).

{¶ 33} "In general, the court does not 'second guess' medical opinions from medical experts and will remove a medical opinion from evidentiary consideration as having no value only when the report is patently illogical or contradictory * * *." *State ex rel. Certified Oil Corp. v. Mabe,* 10th Dist. No. 06AP-835, 2007-Ohio-3877, quoting *State ex rel. Tharp v. Consol. Metal Prods .,* 10th Dist. No. 03AP-124, 2003-Ohio-6355, ¶ 67.

{¶ 34} The magistrate observes that the standard of review emerging from the above-noted case law is sometimes difficult to apply.

{¶ 35} Here, relator's argument is initially focused upon a single paragraph from Dr. Sardo's narrative report captioned, "Physical Examination." That paragraph states:

> Height: 5'5", Weight: 135 pounds. He was able to step up to the examination table without any difficulty. He was ambulating without an assistive device without any difficulty. He has a well-healed scar in the midline of the lumbar spine. He is tender in the lumbar paraspinals. Motor strength is 5/5

in both lower limbs. Sensation was decreased to pinprick in the left lower leg. Reflexes were 2 + at both knees, 2 + at the right ankle, absent at the left ankle. No swelling in the extremities. Seated straight leg raising was negative bilaterally. Lumbar flexion 30 degrees, zero degree of extension.

Focusing on the above-quoted paragraph, relator asserts:

Thus, Dr. Sardo's findings of physical abnormality consisted of there being a scar on the lower back, a report of low back tenderness, a decreased pinprick sensation of the left lower leg, an absence of left ankle reflex and a reduction of lumbar range of motion.

(Relator's brief, 3.)

{¶ 36} Later, in its brief, relator again asserts:

The doctor's one paragraph of physical examination findings is so limited that there is no opportunity to miss any abnormal findings he reports. Dr. Sardo finds only the presence of a surgical scar on the skin, tenderness to touch in the lumbar region, decreased pinprick in the left leg, an absent left ankle reflex and a reduced lumbar range of motion.

(Relator's brief, 8.)

{¶ 37} Acknowledging the next paragraph captioned "Discussion," relator endeavors to minimize any negative impact on its argument by stating that Dr. Sardo summarizes his findings of abnormality at the following portion of the paragraph:

He does have restriction of his lumbar range of motion and an absent left Achilles reflex on physical examination. Previous EMG from December 9, 2010 revealed a chronic left S1 radiculopathy.

{¶ 38} Relator seems to suggest that the remaining portion of the "Discussion" paragraph fails to provide supportive findings. In actuality, the remaining portion of the "Discussion" paragraph is key to the issue before this court.

{¶ 39} At the core of relator's argument is the assertion that none of the claimant's reported symptoms or limitations on his activities can result in medical findings that

support the conclusion that the allowed conditions alone prohibit sustained remunerative employment.

{¶ 40} To be more specific, relator would argue that the two paragraphs captioned "Current Symptoms" and "Impact on Activities" cannot provide supportive medical findings even though the contents of those paragraphs are addressed in the "Discussion," paragraph.

{¶ 41} According to relator:

> As the name indicates, the subjective history given by the patient is his own set of allegations. In this context, those are allegations of disability being made by the permanent total compensation applicant. Every permanent total compensation applicant, by definition, perceives himself as being unable to work. Thus, when the Commission quotes at length, in an attempt to reconcile Dr. Sardo's checkmark with the rest of his report, what **Hettinger** is telling Dr. Sardo, or when Hettinger reiterates what Dr. Sardo recorded as **Hettinger's** complaints * * *, nothing is being said about **Dr. Sardo's** findings of Hettinger's disability. Instead, this is what Hettinger is saying about Hettinger's disability. During the taking of the subjective history, the physician is in the role of scrivener, recording what the patient says about himself.

(Emphasis sic.) (Relator's reply brief, 3.)

{¶ 42} The magistrate disagrees with relator's characterization of the doctor's role in listening to the complaints. The examining doctor who necessarily listens to and records the complaints is more than a mere scrivener of complaints. It is the doctor's role to assess the complaints in light of his examination and review of the medical records. The complaints can play a significant part in the doctor's disability opinion.

{¶ 43} Here, that Dr. Sardo discusses the complaints regarding pain and physical restrictions indicates he has determined the complaints to be credible and, thus, worthy of supporting his disability conclusion.

{¶ 44} Relator's argument fails to address claimant's pain that is being helped by the placement of a spinal cord stimulator.

{¶ 45} It can be noted that there is no mention of the spinal cord stimulator in the paragraph captioned "Physical Examination." However, the "Discussion" paragraph finds

that "pain is fairly well controlled with a spinal cord stimulator and Tylenol." Certainly, the absence of any mention of pain or its control by spinal cord stimulator in the "Physical Examination" paragraph does not automatically eliminate pain as a factor to be considered in Dr. Sardo's disability conclusion. Clearly, pain can be a factor in a PTD opinion. *State ex rel. Unger v. Indus. Comm.,* 70 Ohio St.3d 672, 676 (1994).

{¶ 46} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).